**Stephen M. SUNDHEIMER, Petitioner,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Respondent.**

**No. 581, Docket 81–4186.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 10, 1981.

Decided Sept. 3, 1982.

11. Ag Asset's contention that the summons is vague, ambiguous and overbroad. is without merit.

tures so that an oil company could obtain illegal tax benefits by claiming fraudulent losses. Some time later, the Justice Department commenced an investigation into the use of the crude oil futures market for tax evasion purposes. Petitioner was implicated and thereafter cooperated with the federal authorities.

On October 27, 1978, in the United States District Court for the Southern District of New York, petitioner pled guilty to a charge that he violated 26 U.S.C. § 7206(2) by knowingly aiding, assisting, and advising in the preparation of false and fraudulent income tax returns. On January 9, 1979, petitioner was sentenced to a year in prison and fined $5,000. The sentence of imprisonment was suspended on condition that petitioner devote the year to an approved community activity, which he did.

On January 16, 1979, the Commission's Division of Enforcement filed a complaint alleging that petitioner's felony conviction made him unfit for registration with the Commission. See Commodity Exchange Act §§ 8a(2)(B) & (3), 7 U.S.C. §§ 12a(2)(B) & (3). The complaint also alleged that petitioner had violated or aided and abetted violations of section 9(b) of the Commodity Exchange Act, 7 U.S.C. § 13(b), which forbids market price manipulations, and section 4c(a)(A), 7 U.S.C. § 6c(a)(A), which forbids conduct "of the character of" accommodation trades.

The Division of Enforcement moved for summary disposition, contending correctly that, because of petitioner's felony plea, he was collaterally estopped from denying his participation in the prearranged trades. The Administrative Law Judge, to whom the matter was referred, held that, because petitioner's manipulation of prices did not end prior to April 21, 1975, when the Commission assumed jurisdiction over crude oil future contracts, the provisions of the Act were applicable to him. The Administrative Law Judge also held that a *prima facie* case of unfitness under section 8a(2)(B) had been made out and that both sections 9(b) and 4c(a)(A) had been violated. He granted

John M. Burns, III, New York City (Burns & Fox, New York City, on the brief), for petitioner.

Glynn L. Mays, Asst. Gen. Counsel, Commodity Futures Trading Com'n, Washington, D. C. (Dennis A. Dutterer, Gen. Counsel, Pat G. Nicolette, Deputy Gen. Counsel, Gregory C. Glynn, Associate Gen. Counsel, and Vivian C. Kresslein, Clerk, Washington, D. C., on the brief), for respondent.

Before MOORE, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Stephen M. Sundheimer (petitioner) asks this Court to review a final order of the Commodity Futures Trading Commission which revoked petitioner's registration as a floor broker and imposed other sanctions as provided in §§ 6(b) and (c) of the Commodity Exchange Act, as amended, 7 U.S.C. §§ 9 & 13b. We affirm.

In 1974, petitioner, a vice-president of Pressner Trading Corporation, agreed that Pressner would take the other side of certain prearranged contracts in crude oil fu-

in part the motion for summary disposition but ordered a hearing so that petitioner could introduce evidence of mitigating circumstances and rehabilitation.

Following the hearing, the Administrative Law Judge held that the evidence of mitigation was insubstantial and the claim of rehabilitation was premature. He suspended petitioner's registration as a floor broker for six months, enjoined him from further violations of the Act, suspended his trading privileges for twenty-four months, and fined him $200,000. On appeal, the Commission reversed the Administrative Law Judge's holding of a section 9(b) violation because petitioner's guilty plea did not encompass all the elements of market manipulation under the Commodity Exchange Act. The Commission held, however, that the transactions covered by the plea were "tantamount to" accommodation trades and violated section 4c(a)(A). The Commission concluded that petitioner's registration should be revoked rather than suspended, reduced the monetary penalty to $100,000, and approved the remaining sanctions.

Petitioner's principal contentions in this Court are that the Commission erred in finding a violation of section 4c(a)(A) and that the sanctions, as imposed, were improper.

### The Section 4c(a)(A) Violation

■ The Commission's summary disposition of the charges against petitioner were based upon his guilty plea. The information to which petitioner pled guilty alleged that he, "together with other persons, fixed, rigged and fraudulently prearranged trades and manipulated the movement of prices on the Crude Oil Market of the New York Cotton Exchange for the purpose of creating predetermined losses for an oil company for the fiscal year ending October 31, 1974 and for the fiscal year ending October 31, 1975, and predetermined gains for the oil company in the following fiscal years." We find no merit in petitioner's claim that he did not thus admit to engaging in any transactions after April 21, 1975, when, pursuant to the Commodity Futures Trading Commission Act of 1974, Pub.L.No.93–463,

88 Stat. 1389, the newly-created Commission obtained jurisdiction over the crude oil futures market. The transactions charged and admitted went well beyond April, 1975, and summary disposition on the issue of liability therefore was proper.

The Commission's holding that the transactions in question violated section 4c(a)(A) because they were "tantamount to" accommodation trades involved an imprecise, and therefore objectionable, choice of language. Section 4c(a)(A) forbids transactions which are "of the character of" accommodation trades, and it is quite apparent that the Commission equated the terms "tantamount to" and "of the character of". However, the Commission would be well advised to adhere to the language of the statutes they are enforcing.

■ Petitioner contends, in any event, that the transactions were not of the character of accommodation trades, because, he says, an accommodation trade must be a fictitious transaction, not a real one. The Commission defines "accommodation trading" as "[w]ash trading entered into by a trader, usually to assist another with illegal trades" and defines "wash trading" in turn as "[e]ntering into, or purporting to enter into, transactions to give the appearance that purchases or sales ... have been made, usually not resulting in a change in the traders' market position." Committee on Agriculture, Nutrition and Forestry, 95th Cong.2d Sess., Futures Trading Act of 1978, Glossary of Terms Used in Commodity Futures Trading (Comm. Print 1979). "The essential and identifying characteristic of a 'wash sale' seems to be the *intent* not to make genuine, bona fide trading transactions in stocks or commodities." *Commodity Futures Trading Commission v. Savage*, 611 F.2d 270, 284 (9th Cir. 1979) (quoting *In re Jean Goldwurm*, 7 Agric. Dec. 265, 274 (1948), with emphasis added). It is this intent, the absence of good-faith, arms-length trading, and the undisclosed prearrangement for losses and gains, that demonstrates the "accommodation" nature of the transactions in the instant case.

There is no unconstitutional ambiguity in identifying an accommodation trade in these terms. As a practical matter, *see Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1163 (8th Cir. 1971), *cert. denied*, 406 U.S. 932, 92 S.Ct. 1770, 32 L.Ed.2d 135 (1972), Pressner's prearranged transactions in the oil company's stock were accommodations for the oil company, criminally unlawful ones at that. That real sales rather than fictitious ones were contemplated does not change the artificial character of the arrangement. Prior administrative use of the term "accommodation trade" was consistent with this practical, everyday meaning. *See, e.g., In re Julian M. Marks*, 22 Agric.Dec. 761 (1963); *In re Irwin M. Eisen*, 22 Agric.Dec. 758, 759 (1963); *In re Julian M. Marks*, 20 Agric.Dec. 457, 458, 459 (1961).

### The Sanctions

Although the sanctions imposed by the Commission were severe, apparently more severe than had been imposed in other cases, they were within statutory limits and constituted a proper exercise of the agency's discretion. *Haltmier v. Commodity Futures Trading Commission*, 554 F.2d 556, 563–64 (2d Cir. 1977); *see Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 187, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973). The only aspect of the Commission's holding that causes us concern is the arguably short shrift which the Commission gave petitioner's proof of rehabilitation.

It is established practice for the Commission to receive evidence of mitigating circumstances and rehabilitation. *See, e.g., In re Tipton* [1977–1980 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,673, at 22,750 (1978). During a three-day hearing, sixteen witnesses testified on petitioner's behalf. In rejecting petitioner's claim of rehabilitation, the Commission said "that rehabilitation in a case like this requires a much greater passage of time before any such evidence can persuade us that rehabilitation has in fact occurred." Petitioner contends that the Commission thus made the passage of time the determinative factor in the rejection, without giving due consideration to the evidence of rehabilitation.

If petitioner were correct in his construction of the Commission's language, we would be concerned that the Commission had abused its discretion. Time is, however, a relevant factor. The Commission may well be right if it believes that rehabilitation ordinarily does not occur overnight. On the other hand, if the Commission arbitrarily requires that a fixed period of time elapse before evidence of rehabilitation even will be considered, it actually is imposing a sentence in the guise of determining fitness for registration.

Although, once again, the Commission's choice of language leaves something to be desired, we are not persuaded that the Commission has any unpublished rule regarding the minimum passage of time. The Commission stated that it gave serious consideration to the evidence of rehabilitation, and we have no reason to disbelieve it. Petitioner may reapply, of course, for registration. *Silverman v. Commodity Futures Trading Commission*, 562 F.2d 432, 439 (7th Cir. 1977). Should the Executive Director reject petitioner's application without giving him a further hearing on the question of rehabilitation, *see* 17 C.F.R. § 3.20(e)(f), or should the Commission fail to give petitioner a fair hearing accompanied by proper consideration of all the evidence, petitioner's claim of prejudice may then be viewed in a different light. On the present record, we cannot say that the sanctions imposed constituted an abuse of discretion.

Finding petitioner's remaining claims of error to be without merit, we deny the petition for review and affirm the Commission's order.