Stephen D. FLAXMAN, Petitioner,

v.

COMMODITY FUTURES TRADING COMMISSION, Respondent.

No. 82–1373.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1982.

Decided Jan. 13, 1983.

Peter Berman, Chicago, Ill., for petitioner.

Josephine Wang, Kenneth M. Raisler and Josephine Wang, Commodity Futures Trading Com'n, Washington, D.C., for respondent.

Before PELL and COFFEY, Circuit Judges, and EAST,* Senior District Judge.

EAST, Senior District Judge.

Flaxman petitions for review of the final order of the Commodity Futures Trading Commission (Commission) entered on February 22, 1982 in *In re Stephen D. Flaxman*, CFTC Docket No. 79–32, Comm.Fut.L.Rep. (CCH) ¶ 21,364 (1982), revoking his registration as an "Associated Person" and directing him to cease and desist from willfully making false statements of material fact in his applications for registration with the Commission. We note jurisdiction pursuant to 7 U.S.C. § 9,[1] and deny the petition.

BACKGROUND

On December 8, 1970, the Chicago Mercantile Exchange (Exchange) entered an ex parte order suspending Flaxman as a solicitor pending his appearance before a subcommittee of that body, and the completion of investigations into six customer complaints which had been filed against him within a period of one year and allegations that he continually traded accounts that were undermargined in violation of the Exchange's margin rules. Flaxman appeared before the subcommittee on February 10, 1971, and the subcommittee concluded that he had "committed no violation that can be proven" with respect to the six customer complaints. The Exchange took no further action on the allegations that Flaxman continually traded undermargined accounts.

Flaxman did not report this investigation and suspension order on his applications for registration[2] with the Commission in 1975, 1977 and 1979, even though the application forms contained questions specifically asking whether the applicant had ever been suspended from an exchange.[3]

In 1979, the Commission instituted proceedings pursuant to the Commodities Ex-

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. The portion of 7 U.S.C. § 9 which sets forth the procedure for appealing an order of the Commission provides:

   Notice of such order shall be sent forthwith by registered mail or by certified mail or delivered to the offending person and to the governing boards of said contract markets. After the issuance of the order by the Commission, as aforesaid, the person against whom it is issued may obtain a review of such order or such other equitable relief as to the court may seem just by filing in the United States court of appeals of the circuit in which the petitioner is doing business a written petition, within fifteen days after the notice of such order is given to the offending person, praying that the order of the Commission be set aside.... Upon the filing of the petition the court shall have jurisdiction to affirm, to set aside, or modify the order of the Commission, and the findings of the Commission as to the facts, if supported by the weight of evidence, shall in like manner be conclusive.

2. Any person who solicits orders for the purchase or sale of commodity futures contracts must be registered as an Associated Person with the Commission. 7 U.S.C. § 6k.

3. The application forms for 1975 and 1977 contained the following question:

   Have you ever been refused registration as a commodity futures representative or customers' man or account executive or membership privileges on any commodity or security exchange or has any such registration or membership right ever been suspended or revoked?

   Flaxman answered "No" to this question in both 1975 and 1977.

   The renewal application for 1979 asked:

   Are you currently, or have you been in the past 10 years, subject to a suspension, expulsion, bar, fine, censure, denial of membership or registration, cease and desist order, temporary or permanent injunction, denial of trading privileges or other sanction or discipline through an adverse determination, voluntary settlement or otherwise by:

   (ii) any commodity or securities exchange related clearing organization, association registered with the Commission under Title III of the Act or the National Association of Securities Dealers, Inc.?

   In an application dated February 21, 1979, Flaxman again answered "No." No supplemental statements amending or explaining these answers were filed. In bold print, each of the applications in 1975, 1977 and 1979 advises that:

   Willful falsification or misrepresentation or willful omission of any material fact required to be stated in this application shall constitute cause for the suspension or revocation of registration and/or prosecution under criminal statutes.

change Act, 7 U.S.C. §§ 9,[4] 13b[5] and 12a(3)[6] to determine whether or not Flaxman was unfit to be registered as an Associated Person. The Commission's Division of Enforcement alleged that Flaxman had violated the Act by willfully making false statements or by willfully omitting material facts from his applications for registration with the Commission in 1975, 1977, and 1979, and that there was "other good cause" to revoke Flaxman's registration based upon a 1977 "small claims" reparations[7] decision entered against Flaxman for engaging in unauthorized trading in *Noha v. International Commodity Corp. and Stephen Flaxman,* [1977–1980 Decisions] Comm.Fut.L.Rep. (CCH) ¶ 20,481 (1977), *review denied,* [1977–1980 Decisions] Comm. Fut.L.Rep. (CCH) ¶ 20,665 (CFTC 1978).

The present case was submitted to an Administrative Law Judge (ALJ) on a stipulated record, and the ALJ issued an initial decision on May 30, 1980, revoking Flaxman's registration as an Associated Person and ordering him to cease and desist filing false applications for registration. Flaxman appealed to the Commission.

The Commission found that Flaxman had indeed failed to disclose the Exchange's or-

der of December 8, 1970, suspending him as a solicitor, and that the failure to disclose this information constituted a willful omission of a material fact. *In re Flaxman,* Comm.Fut.L.Rep. (CCH) p. 25,711, 25,714 (1982). The Commission further found that Flaxman had not demonstrated that he was rehabilitated. In this regard, the Commission noted that the events and allegations which gave rise to the *Noha* reparations decision had tainted Flaxman's background and that they should have been explained. *Id.* at 25,715–25,716. Finally, the Commission revoked Flaxman's registration as an Associated Person and ordered him to cease and desist from willfully making false statements of material fact in his applications for registration. *Id.* at 25,716.

## DISCUSSION

The Commission is empowered to suspend or revoke the registration of any person who has willfully made any false or misleading statement of material fact on a registration application, or who has willfully omitted to state any material fact which is required to be stated on the application. 7 U.S.C. §§ 9, 12a(3).[8] Moreover, the Commission is authorized to enter cease and

---

**4.** 7 U.S.C. § 9 provides, in relevant part:
   If the Commission has reason to believe that any person ... has willfully made any false or misleading statement of a material fact in any registration application or any report filed with the Commission under this Act, or willfully omitted to state in any such application or report any material fact which is required to be stated therein, ... it may serve upon such person a complaint stating its charges in that respect, which complaint shall have attached or shall contain therein a notice of hearing, specifying a day and place not less than three days after the service thereof, requiring such person ... to show cause why the registration of such person, if registered as futures commission merchant or any person associated therewith, ... should not be suspended or revoked.

**5.** 7 U.S.C. § 13b provides, in relevant part:
   If any person ... is violating or has violated any of the provisions of this Act or of the rules, regulations, or orders of the commission thereunder, the Commission may, upon notice and hearing, and subject to appeal as in other cases provided for in paragraph (b) of this section [7 U.S.C. §§ 9, 15], make and

enter an order directing that such person shall cease and desist therefrom ....

**6.** 7 U.S.C. § 12a(3) authorizes the Commission to "revoke the registration of any person registered under this Act if cause exists under subparagraph (2)(B) or (C) which would warrant a refusal of registration of such person ...." Subparagraph 12a(2)(B) authorizes the Commission to refuse to register any person "if it is found, after opportunity for hearing, that the applicant is unfit to engage in the business for which the application for registration is made, (i) because ... the applicant willfully made any material false or misleading statement in his application or willfully omitted to state any material fact in connection with the application, or (ii) for other good cause shown ...."

**7.** Reparations proceedings were created by Congress in order to permit commodity customers to bring private causes of action before the Commission against Commission registrants. 7 U.S.C. § 18.

**8.** *See* notes 4 and 6, *supra.*

desist orders to prevent future violations. 7 U.S.C. § 13b.[9]

Flaxman contends that the Commission erred in finding that his failure to report the 1970 order suspending him as a solicitor pending his appearance before a subcommittee of the Exchange constituted an omission of a "material fact." The Commission expressed its view concerning the materiality of misstatements or omissions as follows:

[I]f the omitted fact would have been a significant ingredient in the Commission's determination of the applicant's fitness for registration—and we wish to emphasize that it need *not be the determining factor, In the Matter of Carlos T. Trueba,* [1977–1980 Transfer Binder] Comm.Fut.L. Rep. (CCH) ¶ 20,181 (1979)—then the fact omitted is material as a matter of law. *Cf. TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, [460] 466[, 96 S.Ct. 2126, 2137, 48 L.Ed.2d 757] (1976). *See also Affiliated Ute Citizens v. United States,* 406 U.S. 128[, 92 S.Ct. 1456, 31 L.Ed.2d 741] (1972).

*In re Flaxman,* Comm.Fut.L.Rep. (CCH) at 25,714 (1982), *quoting In re Michael Menkes,* 2 Comm.Fut.L.Rep. (CCH) ¶ 21,258 at 25,273 (1978).

Flaxman professes to have no quarrel with the "significant ingredient" test of what constitutes a material fact. He contends, however, that the Commission did not actually apply that test, but instead accepted the definition set forth by the ALJ that "[a]ny information directly responsive to a specific question on a Commission application is material."

■ There is no evidence that the Commission applied the ALJ's standard, as Flaxman claims. In support of its conclusion that Flaxman's 1970 suspension as a solicitor was a material fact, the Commission stated:

The Commission wishes to emphasize that it is especially interested in information required to be disclosed on its applications for registration which pertains to the past business conduct of the applicants. Mandatory disclosure of past disciplinary actions brought against applicants by commodity and securities exchanges called for on Commission applications is a necessary regulatory mechanism to alert the Commission that an applicant's fitness for registration may be suspect. Such a disclosure by an applicant for registration affords the Commission with an opportunity to judge whether a more detailed investigation into the applicant's background should be made.

*In re Flaxman,* Comm.Fut.L.Rep. (CCH) at 25,714 (1982). This is not to say that all information requested by the Commission is necessarily material. However, "the Commission has been entrusted by Congress with the special mission of enforcing fair practice and honest dealing on the commodity futures markets." *Silverman v. Commodity Futures Trading Comm'n,* 562 F.2d 432, 438 (7th Cir.1977). To effectively discharge his mission and to effectively maintain the integrity of the fiduciary relationship between broker and customer, the Commission must be provided with sufficient information to enable it to evaluate an applicant's fitness for registration. Certainly, past disciplinary actions against an applicant are material to that inquiry.

■ Flaxman contends that his 1970 suspension as a solicitor is immaterial because the Exchange concluded after a hearing that he "had committed no violations which can be proven." This argument is without merit. The Commission has an independent duty to determine the fitness of applicants for registration. 7 U.S.C. § 12a(1)(2). It is not bound by the findings of the Exchange. Had Flaxman revealed the fact that he had been suspended from the Exchange, the Commission might well have asked him for more information concerning the circumstances or conducted its own investigation into the matter.

■ Flaxman disputes this, noting that the Commission concedes that at least as of November, 1975, its Division of Trading and

---

**9.** *See* note 5, *supra.*

Markets received the Exchange's rule violation summary which indicated that in 1970 Flaxman had been suspended by the Exchange; yet the Commission never investigated the underlying facts and even re-registered Flaxman in 1977 and 1979.

The fact that one division of the Commission had received a report of Flaxman's suspension does not undercut the materiality of that suspension or excuse Flaxman's failure to reveal it. *See Auster v. Commodity Futures Trading Comm'n,* 687 F.2d 294 (9th Cir.1982). It is not the Commission's obligation to sift through the masses of material submitted to its various divisions to ferret out all potentially disqualifying acts in an applicant's background. Rather, it is the applicant's obligation to truthfully answer the Commission's questions concerning past disciplinary actions.

As the Second Circuit stated in *Commodity Futures Trading Comm'n v. British American,* 560 F.2d 135, 139–140 (2d Cir. 1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978): "Registration is the kingpin in this statutory machinery, giving the Commission the information about participants in commodity trading which it so vitally requires to carry out its other statutory functions of monitoring and enforcing the Act."

Flaxman deprived the Commission of this information by untruthfully stating that he had never been suspended. In doing so, he misstated and omitted a material fact.

WILLFULNESS

Flaxman next contends that the Commission erred in finding that his failure to disclose the suspension from the Exchange constituted a "willful" omission of a material fact in violation of 7 U.S.C. §§ 9 and 12a(2)(B).[10] The thrust of this argument is that Flaxman's failure to disclose the suspension was merely negligent because he did not know that the Commission would consider the temporary suspension a "material fact," and because there was no evidence that he had any intent to deceive or defraud the Commission. He does not ar-gue that he failed to understand that the questions on the application forms called for him to disclose any temporary suspensions, nor does he argue that he forgot that he had been suspended. Instead, he contends that his failure to disclose the suspension was not willful because he had no intent to deceive and because he did not know that the Commission would consider the omission "material."

■ The ALJ found that the omissions were "deliberate and willful," and the Commission found that they were "willful." Flaxman's argument that the omission of a material fact is not willful unless the applicant knows that the fact is material is unpersuasive. Such an interpretation would, in effect, leave the determination of materiality up to the applicant, since the applicant could avoid sanctions simply by claiming that he did not think the omitted fact was material.

■ The proper standard of willfulness was phrased by this court in *Goodman v. Benson,* 286 F.2d 896, 900 (7th Cir.1961):

[I]f a person 1) intentionally does an act which is prohibited,—irrespective of evil motive or reliance on erroneous advice, or 2) acts with careless disregard of statutory requirements, the violation is willful.

Flaxman contends that the Commission's application of the *Goodman* standard of willfulness is erroneous because his conduct was at most negligent, and proof of mere negligence is insufficient to establish a willful violation. *Cf. Gordon v. Shearson, Hayden, Stone,* Comm.Fut.L.Rep. (CCH) ¶ 21,-016 (1980). The flaw in this argument is that it is unduly generous to describe Flaxman's conduct as merely negligent. Flaxman intentionally answered the Commission's questions falsely because, he claims, he thought his suspension from the exchange was immaterial.

Flaxman also argues that application of the *Goodman* standard of willfulness is inappropriate because proof of scienter is necessary to establish a violation of § 12a(2)(B)(i), and there was no proof of

10. *See* notes 3 and 4, *supra.*

scienter here. In *Ernst & Ernst v. Hoch-felder,* 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976), the Court defined scienter as "a mental state embracing intent to deceive, manipulate, or defraud."

Flaxman relies on *Ernst & Ernst,* which held that proof of scienter is required in an action for civil damages under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and upon an analysis of the legislative history and language of § 10(b), which proscribes the use or employment of "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ." The Court held that use of the words "manipulative," "device" and "contrivance" indicate an "unmistakable . . . congressional intent to proscribe a type of conduct quite different from negligence." *Id.* at 199, 96 S.Ct. at 1383. The Court found special significance in the use of the word "manipulative," saying: "It is and was virtually a term of art when used in connection with securities markets. It connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Id.* at 199, 96 S.Ct. at 1383.

Flaxman's reliance on *Ernst & Ernst* and its progeny is misplaced because neither the language nor legislative history of the statute in question here, 7 U.S.C. § 12a(2)(B)(i), suggests that Congress intended to proscribe only violations committed with an intent to defraud. Section 12a(2)(B)(i) permits the Commission to refuse to register an applicant if it finds, after opportunity for a hearing, that the applicant "willfully made any material false or misleading statement in his application or willfully omitted to state any material fact in connection with the application . . . ." While it is clear that the omission or misstatement must be intentional, it is no defense that an applicant knowingly omitted or misstated the truth because he thought it was immaterial or of no interest to the Commission. It is the omission or misstatement of the fact which must be willful; the determination of whether the fact is material is for the Commission and the courts.

To impose a requirement that an applicant know that an intentionally omitted or misstated fact is material before the omission or misstatement may be deemed "willful" would, in effect, permit applicants to become the final arbiters of what constitutes material information and would defeat the Commission's statutory mission of ensuring the fitness of applicants for registration. We decline to do so.

## RELIANCE ON THE REPARATIONS CASE

Flaxman next argued that the Commission should not have relied upon the small claims reparations proceeding which was decided against him. He notes that the reparations case was decided solely on the basis of affidavits, and that he had no opportunity to cross-examine the complaining client. He contends that the Commission's reliance on the reparations case constitutes an application of the doctrine of collateral estoppel because the results of that case are being used against him in this case without the opportunity to relitigate the issue. This argument is frivolous.

■ The Commission's decision specifically states that it did not use the findings in the reparations case in finding Flaxman unfit for registration. Once a prima facie case of unfitness for registration is established, the burden shifts to the respondent to prove rehabilitation and mitigation. *In re Carl M. Tipton, Jr.,* [1977–1980 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,673 at p. 22,750 (CFTC 1978), *aff'd mem.,* 636 F.2d 1220 (6th Cir.1980). Flaxman asserted that his record for the past four years was "untarnished." The Commission disagreed, stating that the most recent willful misstatements on applications had occurred in 1979, with the first such misstatements having occurred in 1975, and that "[t]he repetitions, without more, undercut Mr. Flaxman's rehabilitation theory." The Commission then went on to note that the events and allegations which gave rise to the reparations case "tainted respondent's background to a sufficient degree that those

events should have been explained by respondent," and that "respondent assumed the risk on nonpersuasion, where the burden was clearly his, when he remained mute in the face of the cloud created by the [reparations] case."

It is clear from the Commission's decision that it found Flaxman had not met his burden of proof on rehabilitation, even without reference to the reparations case. Further, the Commission did not hold that the findings of the reparations case were binding in any way, but only that Flaxman should have explained what had happened. We find no error.

SANCTION

Finally, Flaxman claims that the Commission erred in imposing the relatively drastic sanction of license revocation. An agency sanction within statutory limits must be upheld unless it reflects an abuse of discretion. *Haltmier v. Commodity Futures Trading Comm'n,* 554 F.2d 556, 563 (2d Cir.1977). On at least three different occasions, Flaxman falsely answered the Commission's questions concerning whether he had ever been suspended from an exchange. He is unable to point to any cases in which the Commission itself has imposed a substantially lesser sanction for comparable violations under similar circumstances. We find no abuse of discretion.

Flaxman's petition for review is denied and the final order of the Commission is affirmed.

AFFIRMED.