**Emil LAWRENCE, Petitioner,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Respondent.**

**No. 84–7141.**

United States Court of Appeals, Ninth Circuit.

Submitted Jan. 16, 1985.*

Decided May 3, 1985.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R. App.P. 34(a) and Ninth Circuit Rule 3(f).

Alan M. Caplan, San Francisco, Cal., for petitioner.

Debra J. Hackford, CFTC, Washington, D.C., for respondent.

Before CHOY, FARRIS and BEEZER, Circuit Judges.

CHOY, Circuit Judge:

## I. BACKGROUND

### A.

Petitioner Emil Lawrence, who is registered with the Commodity Futures Trading Commission ("the Commission") as an associated person ("AP") of a commodity broker, was a respondent in an earlier Commission enforcement proceeding, *In re First Commodity Corp. of Boston,* CFTC Docket No. 79–28. On September 3, 1980, Lawrence agreed to a settlement in that proceeding. He consented to findings that he had violated antifraud provisions of the Commodities Exchange Act, 7 U.S.C. §§ 1–26 (1980) "the Act", relating to transactions in commodity options, and agreed to pay a civil penalty of $3,500.[1] Finding this settlement acceptable, the Commission on October 15, 1980 entered an order imposing a $3,500 civil penalty against Lawrence, payable six months later on April 15, 1981.[2]

---

1. Lawrence also consented to entry of a cease and desist order against such violations for a six-month probationary period.

2. The Commission is authorized by the Act to impose a civil penalty of up to $100,000 for any violation of the Act, Commission regulation or order. *See generally* 7 U.S.C. § 9.

The underlying order to pay the $3,500 civil penalty, for the violation of which the Commission brought the instant proceeding, was the result of Commission findings that Lawrence had violated the Act and Commission regulations prohibiting fraud in the offer and sale of commodity options, and prohibiting the solicitation or acceptance of orders for commodity options by any person not registered as an AP of a registered commodities broker.

Although Lawrence maintains his innocence of the underlying violations (which are summarized in *In re First Commodity Corp. of Boston,* CFTC Docket No. 79–28 (October 15, 1980) ), it

The instant petition for review arises from a disciplinary proceeding conducted by the Commission pursuant to sections of the Act, 7 U.S.C. §§ 9, 12a(3), and 13(b). In this proceeding the Commission determined that Lawrence had willfully violated its previous order to pay the civil penalty assessed against him. For this willful violation, the Commission suspended Lawrence's AP registration for three months.[3] Lawrence appeals his suspension.

### B.

The administrative complaint served upon Lawrence on December 9, 1981 charged that he was unfit to remain registered as an AP of a commodity broker[4] because he had violated the Commission's October 15, 1980 order to pay the $3,500 civil penalty. Pursuant to the Act,[5] the Commission sought to determine whether it should revoke Lawrence's AP registration, suspend his contract market trading privileges, or enter a cease and desist order.[6]

The complaint at issue here was the subject of a hearing before Administrative Law Judge ("ALJ") George Painter. The ALJ found that Lawrence did not pay the $3,500 penalty when it came due on April 15, 1981; that the Commission's Division of Enforcement notified Lawrence by letter dated May 7, 1981 that the penalty had become due; that Lawrence made no written request to the Division for an extension of time in which to pay the penalty between April 15 and December 9, 1981, when the second complaint was served; that Lawrence spoke with no responsible Division official between April 15 and December 9, 1981 concerning his alleged inability to pay the penalty; that Lawrence had not paid the penalty when the second proceeding was commenced; and that any efforts by Lawrence to resolve the matter before issuance of the second complaint "were half-hearted at best."

Concluding that Lawrence had violated the Commission's order to pay his penalty,[7]

---

is not our task to decide those issues. The offer of settlement consented to by Lawrence states on its face that the findings of wrongdoing made therein would have no collateral effects *except* for other Commission proceedings. The instant disciplinary action is just such a proceeding.

3. *In re Sanchez,* CFTC Docket No. 82–5 (Jan. 31, 1984) (Commission's opinion and order), reported at [1982–84 Transfer Binder] Comm.Fut.L. Rep. (CCH) ¶ 21,985. Mr. Thomas Sanchez (not a party here) was also named as a respondent in that disciplinary proceeding for similarly violating a Commission order to pay a civil penalty agreed to by him in settlement of an earlier administrative enforcement action. Mr. Sanchez has not sought review of the Commission's January 31, 1984 Opinion and Order, the final order appealed from here by Mr. Lawrence.

4. The employees of futures commission merchants who solicit and accept customers' orders for futures contracts must be registered under the Act as "associated persons." 7 U.S.C. § 6k.

5. Under the Act, 7 U.S.C. §§ 12a(3)–(4), the Commission is authorized in accord with procedures under 7 U.S.C. § 9 to revoke, suspend or place restrictions upon the registration of any person registered under the Act if "such person has been found by the Commission or by any court of competent jurisdiction to have violated, or has consented to findings of a violation of, any provision of this chapter, or any rule, regu-

lation or order thereunder." 7 U.S.C. § 12a (3)(A).

6. The Act provides in pertinent part:

If the Commission has reason to believe that any person ... is violating or has violated any of the provisions of this chapter or of the rules, regulations, or orders of the Commission thereunder, it may serve upon such person a complaint stating its charges in that respect .... Upon evidence received, the Commission may prohibit such person from trading on or subject to the rules of any contract market and require all contract markets to refuse such person all trading privileges thereon for such period as may be specified in the order, and, if such person is registered with the Commission in any capacity, may suspend, for a period not to exceed six months, or revoke, the registration of such person, and may assess such person a civil penalty of not more than $100,000 for each such violation.

7 U.S.C. § 9.

7. The ALJ also concluded in the "discussion" portion of his decision (i.e., neither finding of fact nor conclusion of law) that Lawrence "has been in economic straits for some time, and that his failure to keep his agreement was due more to economic necessity than to a willful violation of the Commission's order."

We are persuaded that the ALJ's use of the term "willful" in his discussion was more collo-

the ALJ directed him to pay the $3,500 civil penalty, with interest, within ten days, and also imposed an additional $500 penalty for the violation.

The Commission, following an independent review of the record, in part reversed the decision of the ALJ. The Commission concluded that Lawrence's violation of its order to pay the $3,500 on April 15, 1981 had been willful, and suspended his AP registration for three months.

The Commission based its determination on uncontroverted evidence that Lawrence was aware that payment was due on April 15, 1981; that he failed to pay the penalty when due; that he never made a written request for an extension of time in which to pay; that he never responded in writing to a warning letter sent to him by the Commission on May 7, 1981; and that he never tendered even partial payment until after the enforcement complaint was filed, more than seven months after payment had come due. The Commission's January 31, 1984 Order provided that Lawrence's suspension would not take effect until 30 days after service so as to give Lawrence an opportunity to wind down his affairs in an orderly fashion.[8]

## II. ISSUES

This appeal presents three issues, the first and third being questions of first impression.

1. Did the the Commission have jurisdiction under § 6(b) of the Commodity Exchange Act to bring an independent enforcement proceeding against Lawrence for his failure to timely pay the consented-to civil penalty?

2. Did the weight of the evidence support the Commission's finding that Lawrence's violation of its order to pay the penalty was willful?

3. Was the Commission's decision to suspend Lawrence's AP registration for three months so severe that it should be set aside as an abuse of discretion?

## III. DISCUSSION

### A. Jurisdiction

Lawrence contends that pursuant to 7 U.S.C. § 9 and 28 U.S.C. § 1355, the Commission's only remedy for his violation of its 1980 order to pay the civil penalty was to refer a collection action to the Department of Justice. He argues that the Commission lacked jurisdiction to bring the second, independent enforcement action.

28 U.S.C. § 1355 gives the district courts original jurisdiction over court actions brought to reduce fines to judgment. 7 U.S.C. § 9a provides that collection of overdue money penalties imposed by the CFTC shall be referred to the Attorney General for recovery in a federal district court action. The Commission, however, also has the authority to suspend or revoke the registration of any person it finds to have violated any of its orders. 7 U.S.C. § 9, see supra, note 6.

Nothing in the language of § 9 suggests that the Commission's authority to bring an action seeking suspension is limited to violations of particular kinds of Commission orders. We conclude that the broad reference in § 9 to "any" Commission order includes the order to Lawrence to pay his monetary penalty.

Likewise, 7 U.S.C. §§ 12a(3)–(4) expressly empowers the Commission to suspend or revoke the registration of anyone found to have violated any provision of the Act or

quial than technical-legal. His discussion does not explain the legal standard for determining when a violation is "willful." A decision by the ALJ containing such an explanation conceivably could have still concluded that Lawrence's violation was not willful, but on the facts of this case, such a conclusion would have required thorough argument and justification. Thus, unlike the Commission, the ALJ never truly measured Lawrence's conduct against the legal standard of willfulness.

**8.** The three month suspension of Lawrence's registration as an AP went into effect on March 2, 1984. On February 28, 1984, Lawrence filed the instant petition for review. On April 10, 1984, this court stayed the suspension pending disposition of this appeal.

order thereunder. Congress repeated verbatim in § 12a(3) the broad language used in § 9, again without any suggestion that the Commission's authority to suspend or revoke registration hinges on the particular type of Commission order violated.[9]

The Commission argues that although 7 U.S.C. § 9a limits its collection remedy to referral to the Justice Department, Lawrence's failure to pay the $3,500 penalty constituted a discrete violation of a Commission order, cognizable under 7 U.S.C. § 9.

■ The Commission's interpretation of its authority under the Act deserves substantial deference. The Supreme Court has repeatedly declared that "great deference [should be given] to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

■ Recently, the Supreme Court reemphasized the narrowness of a court's inquiry in reviewing an agency's interpretation of its empowering act. When the legislature has left a gap in a statute as to the details of its administration, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* —— U.S. ——, ——, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (citations omitted).

Nothing in 7 U.S.C. § 9a or 28 U.S.C. § 1355 suggests that Congress intended referral to the Department of Justice to be the Commission's exclusive remedy for violation of its orders to pay fines. The more reasonable interpretation is that Congress did not intend such exclusivity, since 7 U.S.C. §§ 9, 12a(3)–(4) expressly provide for other, noncollection remedies for violations of any Commission order.[10]

The Commission's interpretation of its powers is also consistent with the Federal Claims Collection Act of 1966, 31 U.S.C. §§ 3701, 3711, 3718–19 (*as amended by* Debt Collection Act of 1982, Pub.L. No. 97–365, 96 Stat. 1749 (1982)) ("FCCA"). The legislative history of the FCCA expressly reflects Congress's stated preference for the handling of agency claims by the agency involved.[11] The provisions of the FCCA and the amendments in the Debt Collection Act of 1982 express a Congressional mandate that agencies play a more active role in the collection of delinquent claims than merely referring them to the Department of Justice.[12]

---

9. Lawrence fails to challenge in any respect this reading of 7 U.S.C. §§ 9, 12a(3)–(4). Indeed, although he argues that the Commission's enforcement complaint was not authorized by statute, he fails even to mention 7 U.S.C. §§ 9, 12a(3)–(4), or to address the interplay between 7 U.S.C. §§ 9 and 9a.

10. See *United States v. Stevenson,* 215 U.S. 190, 197–98 (1909), 30 S.Ct. 35, 36, 54 L.Ed. 153 and *Dollar Savings Bank v. United States,* 86 U.S. (19 Wall.) 227, 238–40, 22 L.Ed. 80 (1874), in which the Court held that in the absence of specific language, Congress will not be presumed to have excluded the Government from well-recognized methods of enforcing its statutes.

Lawrence's contrary reliance upon *Kissinger v. Reporters' Committee for Freedom of the Press,* 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), is misplaced. The issue in *Kissinger* was whether a private right of action should be *implied* under two federal statutes. Here, the Commission's authority to bring administrative enforcement proceedings for violations of its orders is expressly provided for in the Act.

11. Congress stated that it preferred that agencies handle the collection of their own claims because they are more likely to be familiar with the facts and legalities of such claims. *See* S.Rep. No. 1331, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Ad.News 2532, 2536. The Senate Judiciary Committee also recommended enactment of the FCCA because it would reduce the drain on the Justice Department and the courts. *See id., reprinted in* 1966 U.S.Code Cong. & Ad.News at 2534.

12. The FCAA encourages diligent claims collection by federal agencies and direct the Comptroller General and the Attorney General to promulgate regulations governing the administrative collection of all federal civil claims. *See* 31 U.S.C. §§ 3711, 3718–19 (1976).

Pursuant to this authority, the General Accounting Office ("GAO") and the Department of Justice jointly adopted regulations which direct in pertinent part:

Agencies seeking the collection of statutory penalties, forfeitures, or debts provided for as

We hold that the Commission had jurisdiction to bring a second action seeking sanctions for Lawrence's violation of its payment order.

### B. Willfulness

Although Lawrence concedes that he never attempted to pay the overdue $3,500 penalty until the Commission complaint placed his AP registration in jeopardy, he attacks the Commission's conclusion that his failure to pay was willful. Instead, he characterizes his prolonged, knowing failure to pay as "negligent."

The standard of review applicable here is set forth in 7 U.S.C. § 9: "the findings of the Commission as to the facts, if supported by the weight of evidence, shall ... be conclusive." The phrase "weight of evidence" in 7 U.S.C. § 13a has been interpreted to mean " 'the preponderance' or 'greater weight of the evidence.' " *Myron v. Hauser*, 673 F.2d 994, 1005 n. 17 (8th Cir.1982) (quoting *Haltmier v. CFTC*, 554 F.2d 556, 560 (2d Cir.1977) ).

Lawrence admits that he was aware that his fine had fallen due on April 15, 1981. Despite doubts about his ability to pay the fine as far back as September 1980 when he first agreed to it, Lawrence admittedly never made·a written request for an exten-

sion of time; nor did he speak with any responsible official at the CFTC's Division of Enforcement. Moreover, Lawrence admits that he never responded in writing to the Commission's warning letter of May 7, 1981.[13] He did not even tender partial payment during the eight months of his delinquency leading up to the issuance of the second complaint.

Lawrence does not dispute these facts. Instead he argues that his conduct . was merely negligent. For purposes of the Act, however, it is well settled that:

> [i]f a person 1) intentionally does an act which is prohibited,—irrespective of evil motive or reliance on erroneous advice, or 2) acts with careless disregard of statutory requirements, the violation is willful.

*Flaxman v. CFTC*, 697 F.2d 782, 787 (7th Cir.1983) (quoting *Goodman v. Benson*, 286 F.2d 896, 900 (7th Cir.1961) ). To establish willfulness, the Commission only needed to show that Lawrence's ongoing failure to act was intentional as opposed to accidental. Proof of an evil motive is unnecessary. *See Hinkle Northwest, Inc. v. SEC*, 641 F.2d 1304, 1307–08 (9th Cir.1981) (quoting *Nees v. SEC*, 414 F.2d 211, 221 (9th Cir.1969) ). We agree with the Com-

---

an enforcement aid or for compelling compliance will give serious consideration to the suspension or revocation of licenses or other privileges for any inexcusable, prolonged or repeated failure of a debtor to pay such a claim and the debtor will be so advised. 4 C.F.R. § 102.9 (1985). Lawrence does not even acknowledge the existence of these regulations.

The jurisdictional argument Lawrence makes is distinct from his argument that the Commission's May 7, 1981 warning letter did not provide him with adequate notice. This notice argument boils down to the claim that Lawrence's violation was not willful because the warning letter did not specifically threaten him with suspension if he did not pay his penalty.

As discussed *infra*, Lawrence's notice-specificity argument is misguided. If "willfulness" for present purposes does not require specific intent, then the fact that the Commission's warning letter provided non-specific notice does not itself make the suspension impermissible.

**13.** Lawrence argues that the May 7, 1981 letter was inadequate as a "second chance" warning under 5 U.S.C. § 558(c), making the suspension

unlawful under the Administrative Procedure Act ("APA").

This argument is misconceived. Because Lawrence's violation was willful, there was no APA requirement for the Division to provide him with a second chance warning notice. *See* 5 U.S.C. § 558(c). Even in cases of non-willful violations, the APA only requires "notice by the agency in writing of *the facts or conduct which may warrant the action.*" (emphasis added). *Id.* The APA does not require that a respondent be apprised of precisely what action the agency will take because of his conduct.

The purpose of the APA "second chance" doctrine is to give wrongdoers an opportunity to correct their transgressions before actual termination or suspension of their licenses. *Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067, 1074 (7th Cir.1982). An opportunity for the respondent to comply, not a formal hearing, is required. *Id.* Lawrence received such an opportunity. Thus, even assuming arguendo that his violation was not willful, Lawrence received all the process that he was due.

mission that Lawrence's inaction was willful.

■ Lawrence argues that the Commission's willfulness conclusion should be reversed because it failed to give proper deference to the ALJ's first-hand assessment of Lawrence's credibility. But the Commission gives less deference to an ALJ's findings on ultimate questions of fact, and it also need not hesitate to overrule an ALJ's finding if his analysis of the evidence is "logically unsound." *In re Tipton,* [1977–1980 Transfer Binder] Comm. Fut.L.Rep. (CCH) ¶ 20,673 at 22,749, 22,752 and n. 12 (1978), *aff'd mem.,* No. 78–3581 (6th Cir.1981); *see also Pierce v. SEC,* 239 F.2d 160, 162–63 (9th Cir.1956). In *Moore v. Ross,* 687 F.2d 604, 607–09 (2d Cir.1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 969 (1983), the court held that credibility determinations are questions of fact within an agency's province and that the agency's resolution of them contrary to the ALJ's must stand unless it is not supported by substantial evidence.[14]

Given these standards, we affirm the Commission's finding of willfulness. Lawrence's failure to take any meaningful action between April 15 and December 3, 1981 was conscious and it was intentional.

## C. The Discretionary Suspension

Lawrence contests as impermissibly severe the Commission's suspension of his AP registration for three months. Lawrence also maintains that the Commission should not have imposed any sanction because he presented sufficient evidence of mitigation or rehabilitation.

■ Although authorized to do so under 7 U.S.C. §§ 9, 12a, and 13b, the Commission did not prohibit Lawrence from trading on contract markets, enter a cease and desist order against him, or impose conditions on or permanently revoke his registration. We find that the Commission considered several potential sanctions and imposed one—a three month suspension—

that fitted Lawrence's willful violation and served the public interest.

■ Choice of sanction here is a matter within the Commission's sound discretion. *See Silverman v. CFTC,* 562 F.2d 432, 439–440 (7th Cir.1977). If within statutory limits, the Commission's determination will be upheld unless it reflects an abuse of that discretion. *Flaxman v. CFTC,* 697 F.2d at 789; *Sundheimer v. CFTC,* 688 F.2d 150, 153 (2d Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1273, 75 L.Ed.2d 494 (1983); *see also Nees v. SEC,* 414 F.2d 211, 217 (9th Cir.1969).

> The Supreme Court has declared it a: "fundamental principle ... that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence.'" *American Power Co. v. SEC,* 329 U.S. 90, 112 [67 S.Ct. 133, 146, 91 L.Ed. 103] (1946). Thus, the [Administrator's] choice of sanction was not to be overturned unless the Court of Appeals might find it "unwarranted in law or ... without justification in fact...." *Id.* at 112–113, 67 S.Ct. at 146....

*Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973). This "fundamental principle" has repeatedly been applied by the Supreme Court, this court and the other federal courts of appeals in upholding sanctions under the Act and other federal remedial regulatory statutes. *See, e.g., Nees v. SEC,* 414 F.2d at 217; *Pierce v. SEC,* 239 F.2d 160, 163–64 (9th Cir.1956).

In upholding a remedial sanction denying registration to a securities broker, this court articulated the appropriate standard of review for cases of this kind:

> Denial of registration is not to be regarded as a penalty imposed on the broker. To the contrary, it is but a means to protect the public interest.... This

---

**14.** Even more strongly worded is *Retail, Wholesale & Department Store Union v. NLRB,* 466 F.2d 380, 386–87 (D.C.Cir.1972), in which the

court held that an agency's ruling on credibility will be sustained over the ALJ's unless it is "hopelessly incredible."

Court ordinarily should not substitute its judgment of what would be appropriate under the circumstances in place of the Commission's judgment as to measures necessary to protect the public interest.... [W]e cannot conclude that the Commission abused its discretion in denying ... registration.

*Pierce*, 239 F.2d at 163–64 (citations omitted).[15]

■ The standard for suspension of a registration already granted is similar. Once a willful violation of the Commission's 1980 order had been proved, a *prima facie* case of Lawrence's unfitness to remain registered as an AP was established and the statutory basis under the Act to revoke Lawrence's registration was met. *See In re Tipton*, [1977–80 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 20,673.

The three month suspension here meets these settled standards. Well within the limits authorized by statute, the suspension was neither "unwarranted in law" nor "without justification in fact."

### 1. *Mitigation and Rehabilitation*

■ Even though the Commission established a prima facie case of Lawrence's unfitness for continued registration, it could have chosen not to suspend Lawrence's registration if he had shown, through evidence of mitigation or rehabilitation, that the public interest would not be served. *See Savage v. CFTC*, 548 F.2d 192, 196–97 (7th Cir.1977); *In re Tipton*, [1977–80 Transfer Binder] Comm.Fut.L.Rep. (CCH) at 22,750. But the burden on Lawrence to persuade the Commission that he should receive no registration sanction was substantial. *See Flaxman v. CFTC*, 697

F.2d at 788–89; *Savage*, 548 F.2d at 196–97.

In arguing mitigation, Lawrence asserted that he had lacked the funds to timely pay the penalty. He testified that the $6,000 he spent on attorney's fees in the original action rendered him unable to pay the penalty agreed to in settlement of that action.

■ Lawrence has provided no explanation for his decision to subordinate the Commission's payment order to his other financial obligations. His speedy tendering of payment in an attempt to settle this proceeding, once it was commenced, belies his claimed inability to comply. Lawrence's intentional inaction until faced with the second proceeding shows indifference toward the Commission's 1980 payment order and disrespect for the Commission. Lawrence failed to carry the heavy burden of demonstrating mitigation.

As for rehabilitation, Lawrence argues that except for his failure to pay the penalty (and for the underlying findings against him as set forth in the 1980 payment order), he did not otherwise violate the Act or the Commission's regulations. Lawrence also argues that his offer to settle the second complaint by paying the overdue $3,500 demonstrated rehabilitation.

The Commission determined below and argues here, however, that while Lawrence's late offer of payment may have obviated the permanent revocation of his registration, it was not sufficient to assure the Commission that he had gained respect for his duty to abide by the requirements of the Act. The Commission therefore concluded that Lawrence had not demonstrated rehabilitation sufficient to warrant no registration penalty.

---

**15.** In upholding remedial sanctions imposed under 7 U.S.C. § 9, another federal court of appeals has stated:

> It is ... clear ... that if the order of an administrative agency finding a violation of a statutory provision is ʼvalid and the penalty fixed for the violation is within the limits of the statute the agency has made *an allowable judgment in its choice of the remedy* and ordinarily the Court of Appeals has no right to

change the penalty because the agency might have imposed a different penalty.

*G.H. Miller & Co. v. United States*, 260 F.2d 286, 296 (7th Cir.1958) (emphasis in original), *cert. denied*, 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959). To be sustained, the penalty must only bear a "reasonable relation to the unlawful practice found to exist." *Id.* (quoting *FTC v. National Lead Co.*, 352 U.S. 419, 429, 77 S.Ct. 502, 509, 1 L.Ed.2d 438 (1957)).

■ We will not disturb an administrative determination of this kind unless the Commission abused its discretion. *See Silverman v. CFTC,* 562 F.2d 432, 439 (7th Cir.1977). Contrary to his assertion, the Commission did not give "short shrift" to Lawrence's rehabilitation evidence. Although it was within the Commission's sound discretion not to consider such evidence, it chose, over the objections of its Division of Enforcement, to consider all the rehabilitation evidence presented.

■ Reviewing the evidence, we conclude that Lawrence has not demonstrated that the Commission abused its discretion. Neither his tender of payment after commencement of the second proceeding, nor his refraining from further offenses, is sufficiently probative. We conclude that the suspension was specifically authorized by the Act, was warranted in fact, and was within the Commission's statutory discretion.[16]

### 2. *Severity*

■ Lawrence argues that his three-month suspension was too severe because this case represents the Commission's first administrative action brought for a failure to obey an order to pay a civil penalty, and because he may suffer financial harm from his suspension.[17]

The Commission, "like the SEC in the securities area, is the 'statutory guardian' entrusted with the enforcement of the congressional scheme for safeguarding the public interest in commodity futures markets." *CFTC v. British American Com-*

modity *Options Corp.,* 560 F.2d 135, 142 (2d Cir.1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978).

The Commission concluded that the circumstances of Lawrence's willful violation of its payment order raised substantial questions about his respect for the Commission's enforcement program. By imposing the suspension, the Commission sought to impress upon Lawrence and other registrants that they cannot ignore Commission orders, wait for the Commission to proceed administratively against them, and only then, if necessary, bring themselves into compliance with impunity.

■ Lawrence characterizes his suspension as "a novel move by the CFTC," and it is true that this was the first proceeding brought for failure to obey a Commission order to pay a civil penalty. A sanction, however, is "not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases." *Sartain v. SEC,* 601 F.2d 1366, 1374–75 (9th Cir.1979) (quoting *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 187–88, 93 S.Ct. 1455, 1458–59, 36 L.Ed.2d 142 (1973) ).

■ Deterrence is a permissible function of the Commission's disciplinary sanctions. *Steadman v. SEC,* 603 F.2d 1126, 1142 (5th Cir.1979), *aff'd on other grounds,* 450 U.S. 91, 95, 101 S.Ct. 999, 1004, 67 L.Ed.2d 69 (1981). We conclude that Lawrence's three-month suspension was not improper because of its novelty, nor was it unduly severe.

---

**16.** We also reject Lawrence's related argument that he should not have been suspended because he has a "right" to be registered as an AP. Such registration confers a *privilege* with corresponding duties, and this privilege may be suspended or revoked under the Act for a breach of these duties. *See Century Arms, Inc. v. Kennedy,* 323 F.Supp. 1002, 1016–17 (D.Vt.), *aff'd,* 449 F.2d 1306 (2d Cir.1971), *cert. denied,* 405 U.S. 1065, 92 S.Ct. 1494, 31 L.Ed.2d 794 (1972).

**17.** Lawrence also urges this court to take judicial notice of his claim that the three-month suspension will cause him to lose customers and income. Such speculation is not appropriate matter for judicial notice. *See* Fed.R.Evid. 201

("[a] judicially noticed fact must be one not subject to reasonable dispute"); McCormick, *Evidence* § 328 (3d ed. 1984). There is no evidence in the record to support this speculation, and we give it no weight.

Furthermore, although Lawrence cannot function as an AP for the remainder of the time left in his suspension (approximately 78 days), he has not established that he cannot remain gainfully employed in other capacities with his current employer. Nor has he established that his employer, a large company offering a vast array of financial services, cannot service Lawrence's long-term customers during the remainder of the suspension period.

We affirm the Commission's January 31, 1984 Opinion and Order. This court's stay of the three-month suspension is vacated.