**Howard MILLER, Petitioner,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Respondent.**

No. 04–73914.

CFTC No. 92–4.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 2006.

Decided March 22, 2006.

Robert Embers Thompson, Esq., San Francisco, CA, for Petitioner.

Julian E. Hammer, Esq., CFTC—Commodity Futures Trading Commission, Washington, DC, for Respondent.

Before: REINHARDT, NOONAN, and HAWKINS, Circuit Judges.

MEMORANDUM *

Howard Miller petitions for review of an order of the Commodity Futures Trading Commission ("CFTC") imposing a $350,000 civil monetary penalty for fraudulent solicitation in violation of the Commodity Exchange Act. The penalty was imposed on remand. *See Miller v. CFTC*, 197 F.3d 1227 (9th Cir.1999) ("*Miller I*").

The CFTC's choice of sanction is reviewed for abuse of discretion. *Lawrence v. CFTC*, 759 F.2d 767, 774 (9th Cir.1985). Every exercise of power by a federal agency must constitute "an act of reason grounded on the record before the agency." *Miller I*, 197 F.3d at 1236. While the agency must articulate a "rational connection between the facts found and the choice made," *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962), courts "will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974).

Here, the Commission's path may reasonably be discerned. The Commission first calculated the proved amount of loss to seven identified customers of Miller as a starting point for its analysis. The Commission then increased this amount in order to meet its goal of deterrence. *See Miller I*, 197 F.3d at 1236. It looked to the penalty it found necessary to deter similar conduct in a previous case. In *In re Gordon*, [1994–1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,326 (CFTC March 6, 1995) ("Gordon II"), the Commission imposed a $200,000 penalty after five customers testified to fraudulent solicitation over a period of 20 months.

The Commission then adjusted that amount to take into account the differences between the two cases and the effect of inflation on the deterrent effect of a given monetary penalty, finding that an increase was warranted because Miller's misconduct took place over a longer period, 50 months, and because inflation between 1995 and 2004 had "undermined the deterrent effect a $200,000 penalty would have on Miller."

The final amount of the penalty—$350,000—does not relate to customers' losses according to any set formula. However, the choice of civil monetary penalties is an exercise of discretion, not the ministerial application of a formula to the facts. *Cf. Miller I*, 197 F.3d at 1236. Because the Commission's path can reasonably be discerned from its decision and that path rationally relates the facts found to the ultimate penalty decision, the choice of a $350,000 civil monetary penalty was not an abuse of discretion.

Miller's remaining arguments are barred by the law of the case doctrine, since they were resolved in *Miller I*. AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

I cannot agree with the majority's conclusion that the Commission's latest attempt to calculate a civil monetary penalty in this case is "an act of reason grounded on the record before the agency." To the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

contrary, the $350,000 penalty is clearly excessive and inconsistent with the Commission's own precedent.

First, the Commission determined that the amount of loss suffered by the seven testifying customers was approximately $100,000. At oral argument, the government stated that the commissions Miller earned from those seven customers amounted to approximately half that amount, $50,000. The $350,000 penalty is therefore *seven times* the amount of Miller's apparent gains from the seven customers in question.

Moreover, in its 1998 Opinion and Order, the Commission concluded that the total commissions earned by Miller from 1988 through 1991 totaled $637,519.[1] Accordingly, the $350,000 penalty amounts to approximately 55% of Miller's total earnings during the four-year period or almost 220% of his average annual income. By contrast, as the Commission's latest decision acknowledges, in several earlier cases it has imposed penalties amounting to a far smaller percentage of the income earned by the respondent. In one such case, the Commission imposed a $208,000 penalty on a respondent who earned at least $1.2 million during the period at issue in the Complaint—the penalty therefore amounted to 17% of his total earnings. *See In re Commodities International Corp.*, [1996–1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,943 (CFTC Jan. 14, 1997). In another case, the Commission imposed a $510,000 penalty where the respondent earned a salary of $1.4 million in just one of the years covered by the Complaint— the penalty was thus 36% of the respondent's earnings in that single year. *See In re JCC, Inc.*, [1992–1994 Transfer Binder]

Comm. Fut. L. Rep. (CCH) ¶ 26,080 at 41,582 (CFTC May 12, 1994). Therefore, by the Commission's own precedent, Miller's penalty appears to be inappropriate and excessive.

Second, the majority cites the Commission's finding that it was necessary to impose a greater penalty than that in *In re Gordon*, [1994–1996 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,326 (CFTC March 6, 1995) ("Gordon II"), because inflation "undermined the deterrent effect a $200,000 penalty would have *on Miller*." (emphasis added). There is no need to deter Miller from committing future violations however, for the simple reason that he is no longer allowed to work in the commodities industry. The Administrative Law Judge's May 25, 1994 Initial Decision revoked Miller's commodity futures registration and imposed a lifetime trading ban. The excessive size of the penalty thus cannot be justified by the need to deter Miller from any future wrongdoing.

Finally, the history of this case demonstrates the extent to which the Commission's approach has not been "an act of reason grounded on the record." During the course of proceedings spanning over ten years, the penalty amount has gone from $200,000, to $50,000, to $600,000, and is now $350,000. The Commission's path is not one that "may reasonably be discerned." If we were to remand the case again, who knows what figure the Commission would settle upon.

In sum, the Commission's imposition of the $350,000 civil monetary penalty was an abuse of discretion. Miller is seventy-seven years old, has not worked in the commodities industry for over ten years, and

---

1. No information was provided for the 1987 tax year but the period covered by the Complaint included only one third of 1991. Given the ordinary increase in income one experiences over time and the ordinary increases attributable to inflation, the Commission's income figure seems an appropriate one to use for the pertinent period.

the commissions he earned from the seven customers in question totaled only about $50,000. For the forgoing reasons, I would reverse the Commission's order. I respectfully dissent.