John A. VERCILLO, Petitioner,

v.

COMMODITY FUTURES TRADING COMMISSION, Respondent.

No. 97–2441.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1998.

Decided June 8, 1998.

Michael D. Monico, Barry A. Spevack (argued), Jacqueline Jacobson, Monico, Pavich & Spevack, Chicago, IL, for Petitioner.

Robert S. Zwirb (argued), Commodity Futures Trading Commission, Office of the General Counsel, Washington, DC, Dennis M. Robb, Commodity Futures Trading Commission, Chicago, IL, for Respondent.

Before BAUER, FLAUM and EVANS, Circuit Judges.

BAUER, Circuit Judge.

In 1991, appellant John Vercillo, a floor broker at the Chicago Board of Trade, was convicted of numerous criminal offenses arising out of four trades in which he participated in 1988. The Commodity Futures Trading Commission ("CFTC" or "Commission"), Division of Enforcement ("Division"), subsequently filed a three-count administrative complaint against Vercillo, charging him with violating various sections of the Commodity Exchange Act and seeking appropriate remedies. After a rather tangled history and several hearings before an administrative law judge ("ALJ"), the ALJ denied Vercillo's application for registration as a floor broker with leave to reapply in five years, and found that Vercillo should be banned from trading on Commission-regulated markets for a period of five years. Both Vercillo and the Division appealed to the CFTC, which, after a *de novo* review of the record, issued a final agency decision denying Vercillo's application for registration and imposing a permanent trading ban against him. Vercillo filed a petition for review with this court, seeking reversal of the denial of his registration and the permanent ban. For the reasons set forth below, Vercillo's petition is denied and the order of the CFTC is enforced.

## BACKGROUND

This case has a long and tangled procedural history which we will attempt to summarize. Vercillo became a member of the Chicago Board of Trade ("CBOT") in 1975, and was registered with the CFTC as a floor broker in 1982. As a floor broker, Vercillo was engaged in the trading of contracts for soybean futures in the "pit" of the Board of Trade.[1] Things apparently went smoothly for Vercillo until January 1991, when he was convicted of various criminal offenses stemming from four trades in which he had participated between July 27 and September 12, 1988. In the four trades, Vercillo engaged in curb trading[2] with James Nowak ("Nowak"), a broker in the soybean pit, buying or selling soybean lots from Nowak after the market had closed for the day.

Vercillo, Nowak, and a number of other traders and brokers at the CBOT were indicted for their participation in these and

---

1. The exact workings of the CBOT need not be spelled out for purposes of this appeal. For a detailed discussion of the futures market, see *United States v. Ashman*, 979 F.2d 469, 474–76 (7th Cir.1992).

2. "Curb trading" refers to trades taking place after the closing bell has sounded to end official trading for the day. While against the CBOT's rules at the time surrounding Vercillo's illegal trades, "curb trading" has since been officially recognized and is allowed to a limited extent. *See* Rec. Doc. 76 at 54–57.

other illegal schemes. The case went to trial, and in January 1991, Vercillo was convicted of 11 felony counts, including RICO conspiracy, mail fraud, wire fraud, and various violations of sections of the Commodity Exchange Act ("CEA") (specifically, §§ 4b(B) and (D), 7 U.S.C. §§ 6b(B) and (D)). On June 4, 1991, Vercillo was sentenced to 27 months in prison, placed on three years of supervised release, ordered to pay restitution in the amount of $1,800, and fined $10,000. Vercillo's conviction was upheld by this court on October 30, 1992. *United States v. Ashman*, 979 F.2d 469 (7th Cir.1992), *cert. denied*, 510 U.S. 814, 114 S.Ct. 62, 126 L.Ed.2d 32 (1993).

In June 1991, the Division filed a three-count administrative complaint against Vercillo. Counts I and II alleged that Vercillo had violated §§ 4b(B) and (D) of the CEA, 7 U.S.C. §§ 6b(B) and (D), and sought a cease and desist order against him, a suspension or revocation of all his registrations, a trading prohibition, and a civil monetary penalty. Count III alleged that Vercillo, by virtue of his 11 felony convictions, was subject to statutory disqualification from registration with the CFTC under §§ 8a(2)(D) and (E) of the CEA, 7 U.S.C. §§ 12a(2)(D) and (E). The complaint ordered an ALJ to hold a hearing on Count III to determine whether Vercillo was subject to the statutory disqualification and, if so, to suspend his registration and order him to show cause why it should not be revoked.

A hearing was held on June 25, 1991, before Administrative Law Judge George Painter, and shortly thereafter ALJ Painter concluded that Vercillo was statutorily disqualified from registration. Accordingly, ALJ Painter suspended Vercillo's floor broker registration for six months and ordered him to show cause why his registration should not be revoked. In October 1991, Vercillo's registration was revoked because he had failed to provide any evidence that his continued registration would be in the public interest. Vercillo was also ordered to answer Counts I and II of the complaint. After his answer was filed, the Division moved for summary disposition on the issue of liability, which ALJ Painter granted. Both parties briefed the ALJ on the issue of sanctions, the Division recommending that a cease and desist order and permanent trading ban be imposed and Vercillo arguing that the minimum sanction would suffice. Vercillo also requested a hearing on the issue of sanctions. In December 1992, ALJ Painter, without regard to Vercillo's request for a hearing, issued an order imposing a cease and desist order and a seven year trading ban on Vercillo. Both Vercillo and the Division appealed the ALJ's decision to the CFTC.

In August 1993, the Commission found that the ALJ had abused his discretion by failing to hold a hearing on the issue of sanctions. The Commission determined that the ALJ must give weight to the congressional mandate in § 9(b) of the CEA, 7 U.S.C. § 13(b), and found that the large number of felonies for which Vercillo was convicted under § 4b of the CEA raised a presumption that he should be permanently banned from trading. Accordingly, the CFTC reversed the decision of the ALJ and remanded the case for a hearing to permit Vercillo to attempt to rebut the presumption. The Commission directed ALJ Painter to impose a permanent trading prohibition on Vercillo unless he could demonstrate by the weight of the evidence that his access to Commission-regulated markets would pose no substantial threat to their integrity. *In re Vercillo*, [1992–94 Transfer Binder] Comm. Fut. L. Rep. (CCH) para. 25,836 (CFTC Aug. 13, 1993) (*"Vercillo I"*).

While the appeal was pending before the CFTC, Vercillo applied for registration as a floor trader and briefly returned to the CBOT under a "no action" status.[3] The Division challenged the application by filing a

---

3. Apparently, floor traders did not need to be registered prior to the enactment of the Futures Trading Practices Act of 1992, Pub.L. No. 102–546. During the transition between the old law and the new law, the Commission conferred "no action" status on those who had floor trading privileges as of April 26, 1993, and had applied for floor trader registration by June 11, 1993. "No action" status allowed an individual to act as a floor trader while their application being processed. At some point, Vercillo apparently had this status conferred upon him. For a more detailed explanation, see *Vercillo II*, 1997 WL 291441 at *13 n. 5.

second complaint against Vercillo in July 1993, giving notice of its intent to deny his registration. This second complaint ordered the ALJ to ascertain whether Vercillo was subject to a statutory disqualification from registration. In August 1993, the ALJ determined that Vercillo was subject to statutory disqualification of his registration under §§ 8a(2)(D) and (E) of the CEA, 7 U.S.C. §§ 12a(2)(D) and (e). The ALJ suspended Vercillo's no-action status and directed him to show cause why his application for registration should not be denied. Subsequently, however, the ALJ vacated his order and consolidated the proceedings under the second complaint with those under the first complaint. The Division took an interlocutory appeal of the ALJ's decision, which the CFTC reversed, reinstating the suspension of Vercillo's no-action status and vacating the consolidation order. *In re Vercillo*, [1992–94 Transfer Binder] Comm. Fut. L. Rep. (CCH) para. 25, 837 (CFTC Sept. 13, 1993).

In January 1994, the ALJ conducted a simultaneous hearing on both the first and second complaints. In support of its case, the Division presented the testimony of FBI agent Richard Ostrom, as well as documentary evidence establishing that Vercillo had been convicted of numerous felonies. Vercillo testified on his own behalf, and also presented the testimony of three character witnesses. Vercillo's testimony, and the documents in the record, described the four transactions underlying his convictions. In each of the four instances, Vercillo had either bought contracts from, or sold contracts to, Nowak after trading on the CBOT had closed for the day and at predetermined (i.e., other than market) prices.[4] In May 1994, the ALJ issued a decision, concluding that Vercillo had presented sufficient evidence to establish that he was rehabilitated and that he should not be permanently barred from registering as a floor trader. The ALJ also found that Vercillo had rebutted the presumption that he should be permanently barred from trading on any CFTC-regulated markets. ALJ Painter held that Vercillo could reapply for

registration after five years had elapsed, and that Vercillo should be banned from trading for five years. Both Vercillo and the Division appealed.

On appeal, the CFTC overruled the decision of the ALJ. It found that Vercillo had failed to rebut either the presumption that his registration should be permanently denied or the presumption that he should be permanently banned from trading on any CFTC-regulated market. The Commission entered a final decision to this effect on May 30, 1997. *In re Vercillo*, [Current Transfer Binder] Comm. Fut. L. Rep. (CCH) para. 27,071, 1997 WL 586806, (CFTC May 30, 1997) ("*Vercillo II*"). Vercillo filed a timely petition for review on June 12, 1997, and we have jurisdiction over this case pursuant to 7 U.S.C. § 9. In his petition for review, Vercillo argues that the CFTC abused its discretion by not affording proper deference to the findings of the ALJ, and that the permanent trading ban imposed on him violates the Double Jeopardy Clause of the United States Constitution. We discuss each of these arguments in turn.

## DISCUSSION

■■■■ We review decisions of the CFTC deferentially. The Commission's findings of fact are conclusive, and we will not disturb them, if they are supported by the weight of the evidence. 7 U.S.C. § 9; *Monieson v. CFTC*, 996 F.2d 852, 858 (7th Cir.1993). Review of questions of law, or of the application of law to facts, is dependent upon the nature of the question and the comparative qualifications and competence of the decisionmakers. If the answer to a question implicates an agency's expertise, we defer to the agency's decision if it is reasonable; when the question is one of the sort that courts frequently encounter, we review it *de novo*. *Id.* (citations omitted). When reviewing an agency's imposition of sanctions, the choice of sanction will be overturned only if it is unwarranted in law or unjustified in fact. *Id.* (citing *Butz v. Glover Livestock Comm'n Co., Inc.*, 411 U.S.

---

**4.** The exact details of the underlying transactions leading to Vercillo's felony convictions are not crucial to the instant appeal.

182, 185–86, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973)). A sanction which falls within the statutory limits "must be upheld unless it reflects an abuse of discretion." *Flaxman v. CFTC*, 697 F.2d 782, 789 (7th Cir.1983).

## I. Standard of Review Utilized by the Commission

First, Vercillo argues that the CFTC abused its discretion by failing to defer to the factual findings and determinations of the ALJ and by reviewing the ALJ's determinations *de novo*. He alleges that the Commission, at the time the hearings began, accorded deference to the ALJ's factual determinations, citing *In re Ferragamo*, [1990–92 Transfer Binder] Comm. Fut. L. Rep. (CCH) para. 24,982 at 37,576 (CFTC Jan. 14, 1991). However, in *In re Grossfeld*, [Current Transfer Binder] Comm. Fut. L. Rep. (CCH) para. 26,921, 1996 WL 709219 at * 11 (CFTC Dec. 10, 1996), the Commission announced that it was abandoning the deferential standard and returning to its previous *de novo* standard of review. Beyond pointing out these historical facts, and citing several other cases that support the proposition that an ALJ's determinations must be accorded deference, Vercillo's brief does not elucidate why he believes that the Commission erred in applying a *de novo* standard in the present case.

To the extent Vercillo is arguing that the CFTC acted arbitrarily in applying a *de novo* standard in general or was without the power to use that standard at all, his claim is without merit. In a recent decision, *Ryan v. CFTC*, 145 F.3d 910 (7th Cir.1998), this court found that *de novo* review of an ALJ's determinations by the CFTC does not constitute an abuse of discretion. *Ryan*, 145 F.3d 910, 917–18. We reaffirm the reasoning in *Ryan* today. The Administrative Procedure Act ("APA") states that "[o]n appeal from or review of [an] initial decision, the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule." 5 U.S.C. § 557(b). *See also Containerfreight Transp. Co. v. ICC*, 651 F.2d 668, 670 (9th Cir.1981) (APA authorizes agency reviewing findings of ALJ to decide all issues before it

*de novo*). The CFTC has not, however, so limited its powers. The regulations set forth by the Commission regarding review of an ALJ's decision, at all times relevant to Vercillo's case, stated:

> On review, the Commission may affirm, reverse, modify, set aside or remand for further proceedings, in whole or in part, the initial decision by the Administrative Law Judge and make any findings or conclusions which in its judgment are proper based on the record in the proceeding.

17 C.F.R. § 10.104(b). *See also JCC, Inc. v. CFTC*, 63 F.3d 1557, 1566 (11th Cir.1995) (Commission's regulations are in accord with the APA). The CFTC's own rules thus parallel, rather than limit, the standard of review contained in the APA, and the Commission is not limited in its review by those rules. The ability of the Commission to perform a *de novo* review is also supported by caselaw. *See, e.g., Drexel Burnham Lambert Inc. v. CFTC*, 850 F.2d 742, 747 (D.C.Cir. 1988) (when the CFTC and the ALJ disagree on factual inferences to be drawn from the record, courts of appeals must look to see "not whether the agency has 'erred' in 'overruling' the ALJ's findings, but whether its own findings are reasonably supported by the entire record.") (citing *FCC v. Allentown Broadcasting Corp.*, 349 U.S. 358, 364, 75 S.Ct. 855, 99 L.Ed. 1147 (1955)). It is clear that the CFTC is authorized to undertake a *de novo* review of the initial decision of an ALJ.

Furthermore, as the Commission itself noted in *In re Grossfeld*, it had, in the past, reviewed the imposition of sanctions by an ALJ *de novo*. It moved to the abuse of discretion standard, however, to "discourage appeals which simply asked [it] to second-guess the sanctions imposed by the ALJs." 1996 WL 709219 at *11. In determining that a return to the *de novo* standard was proper, the Commission noted the increasingly important role that sanctions play in deterring wrongful conduct and maintaining market integrity. The CFTC concluded that exercising its own independent review, and not being limited by the choices made by the ALJ, is "consistent with the Commission's ultimate responsibility to determine the appropriate

sanction in each case that comes before it." *Id.* This explanation is well-reasoned and cannot be characterized as arbitrary.

While Vercillo emphasizes that the Commission was utilizing a deferential standard of review at the time of his hearings before the ALJ, he does not provide any reason why its *de novo* review of his appeal was arbitrary. It is true that Vercillo's appeal was pending before the Commission at the time it issued its decision in *In re Grossfeld;* however, it is established that "[g]enerally, a decision which changes existing law or policy is given retroactive effect unless retroactive application would cause 'manifest injustice.'" *NLRB v. Bufco Corp.,* 899 F.2d 608, 611 (7th Cir.1990) (citations omitted). Vercillo has not attempted to, nor do we find that he could, establish any prejudice from the retroactive application of *In re Grossfeld.* The CFTC's actions in undertaking a *de novo* review of Vercillo's appeal, then, were not arbitrary or erroneous.

## II. Sanctions Imposed by the Commission

Vercillo next asserts that the Commission abused its discretion by discarding the order of ALJ Painter and imposing its own sanctions against him. First, Vercillo challenges the Commission's denial of his registration, which is governed by §§ 8a(2)(D) and (E) of the CEA. Thereunder:

The commission is authorized—

. . .

(2) upon notice, but without a hearing and pursuant to such rules, regulations, or orders as the Commission may adopt, to refuse to register, to register conditionally, or to suspend or place restrictions upon the registration of, any person and with such a hearing as may be appropriate to revoke the registration of any person—

. . .

(D) if such person has been convicted within ten years preceding the filing of the application for registration or at any time thereafter of any felony that . . . (ii) arises out of the conduct of the business of a futures commission merchant, introducing broker, floor broker, floor trader . . . , (iii) involves embezzlement, theft,

extortion, fraud, fraudulent conversion, misappropriation of funds, securities or property, forgery, counterfeiting, false pretenses, bribery, or gambling, or (iv) involves the violation of section . . . 1341, . . . 1343, . . . [or] 1962 . . . of Title 18 . . .;

(E) if such person, within ten years preceding the filing of the application or at any time thereafter, has been found in a proceeding brought, by the Commission or any Federal or State agency or other governmental body . . . (i) to have violated any provision of this chapter [the Commodity Exchange Act, 7 U.S.C. §§ 1 et seq.] . . . where such violation involves embezzlement, theft, extortion, fraud, fraudulent conversion, misappropriation of funds, securities or property, forgery, counterfeiting, false pretenses, bribery, or gambling, or (ii) to have wilfully aided, abetted, counseled, commanded, induced, or procured such violations by any other person.

7 U.S.C. § 12a(2)(D) and (E) (West Supp. 1998).

Once the Commission proves that an individual is statutorily disqualified under § 8a(2)(D) (and, presumably, § 8a(2)(E) as well), a presumption is raised that he is unfit to act as a Commission registrant. *In re Horn,* [1990–92 Transfer Binder] Comm. Fut. L. Rep. (CCH) para. 24,836 at 36,939 (CFTC April 18, 1990). This presumption is based on the inference that an individual who has already undertaken serious wrongdoing presents a substantial risk of engaging in wrongdoing again. *Id.* (citing *In re Akbar,* [1986–87 Transfer Binder] Comm. Fut. L. Rep. (CCH) para. 22,297 at 31,708 (CFTC Feb. 24, 1986)). In order to rebut the presumption, the petitioner must show by clear and convincing evidence that his continued registration would be in the public interest (that is, that his registration would not raise a substantial risk to the public). *In re Horn,* Comm. Fut. L. Rep. para. 24,836 at 36,939; *see also Flaxman,* 697 F.2d at 788 (once a *prima facie* case of unfitness for registration is established, the burden shifts to petitioner to prove rehabilitation and mitigation). In

*Vercillo I*, the Commission held that the ALJ should assess the following in determining whether Vercillo's registration would pose a risk to the public or to market integrity: the nexus between the wrongdoing underlying his conviction and a threat to the market mechanism; circumstances that mitigate the wrongdoing for which Vercillo was convicted; evidence of rehabilitation or a "changed direction"; and the role Vercillo intended to play in CFTC-regulated markets. *Vercillo I*, Comm. Fut. L. Rep. para. 25,836 at 40,739.

▮▮▮▮ Vercillo does not question on appeal whether the Division proved that he was statutorily disqualified from being registered as a floor agent; rather, he asserts that the CFTC erred when it found, contrary to the decision of the ALJ, that he had not sufficiently rebutted the presumption against registrability. Much of Vercillo's brief is devoted to questioning the weight certain evidence was given by the Commission and arguing that the ALJ's determinations should have been accorded deference. It is true, as Vercillo alleges in his brief, that credibility determinations of an ALJ are entitled to great deference and should be overturned only in extraordinary circumstances. *See, e.g., J.C. Penney Co., Inc. v. NLRB*, 123 F.3d 988, 995 (7th Cir.1997). In the present case, however, the Commission did not attempt to assess the credibility of any of Vercillo's witnesses, but rather determined how much weight their testimony should be given in light of Vercillo's burden of proof. This is entirely within the Commission's discretion when undertaking a *de novo* review of the ALJ's decision, and the Commission did not err in giving its own weight to the testimony elicited in favor of Vercillo. *See Ryan v. CFTC*, 145 F.3d 910, 918–19. However, on appeal, we may review the ALJ's decision as part of the record to see if the Commission's decision was supported by the weight of the evidence. *Morris v. CFTC*, 980 F.2d 1289, 1293 (9th Cir.1992). Furthermore, agency findings which run counter to those of the ALJ are given less weight than they would otherwise receive. *Id.* (citing *Saavedra v. Donovan*, 700 F.2d 496, 498 (9th Cir.), *cert. denied*, 464 U.S. 892, 104 S.Ct. 236, 78 L.Ed.2d 227 (1983)).

▮▮▮ Our review of the Commission's decision to deny Vercillo's registration shows that it is supported by the evidence and was not an abuse of discretion. With regard to evidence mitigating the effect of Vercillo's wrongdoing, the ALJ found that a rule change by the CBOT lessened the chances that Vercillo would again engage in such acts. After Vercillo's conviction, the CBOT institutionalized the practice of curb trading (at least to some extent) and now allows limited trading after the closing bell. The Commission disagreed with the ALJ, finding that this change did not serve to mitigate Vercillo's actions. The Commission found, citing our opinion in *Ashman*, that Vercillo and the other traders had not just engaged in curb trading, but had also engaged in noncompetitive trading by agreeing to the prices at which the trades would take place, thus removing them from the competitive market. Such noncompetitive trading is not allowed under the new CBOT rule, and the fact that curb trading is partly institutionalized does not help Vercillo. In addition, as the CFTC argues in its brief to this court, subsequent rule changes do not mitigate conduct which was illegal at the time it was committed. *Ryan*, 145 F.3d 910, 920; *In re Scheck*, [1992–94 Transfer Binder] Comm. Fut. L. Rep. (CCH) para. 25,834 at 40,733 n. 8 (CFTC Aug. 13, 1993).

The ALJ also found that although Vercillo was convicted of numerous felonies, these convictions did not necessarily reflect that he intended to cheat or defraud any customers, and characterized his crimes as crimes of convenience rather than crimes of greed. The CFTC disagreed with this finding as well, concluding that Vercillo's violations were numerous, intentional, and serious. This finding is well supported by the record. As we noted in *Ashman*, "Vercillo ... [was] well aware that [he] was part of an ongoing and flexible agreement to commit fraud as the need—or perhaps the opportunity— arose." 979 F.2d at 492. In its brief to this court, the Commission points out an instance when Nowak had trouble picking a price for a trade with another trader (who was an undercover FBI agent) and Vercillo stepped in and suggested that the price be set to give

the trader the maximum available profit. *See Ashman*, 979 F.2d at 492. This evidence supports the CFTC's decision to depart from the ALJ's determination. *See Ryan*, 145 F.3d 910, 920 (finding that a similar argument, by a defendant who engaged in similar illegal trades, was unpersuasive).

The Commission also considered other evidence not discussed by the ALJ. For instance, it rejected an argument by Vercillo that the small amount of restitution that he was ordered to pay shows that his conduct did not harm customers. Citing *Ashman*, 979 F.2d at 478, where we found that noncompetitive trading deprived customers of a market opportunity to obtain the best price and, as such, deprived the customers of their property, the CFTC found that Vercillo's actions had caused "grave harm" to the customers and the market. The Commission also discounted Vercillo's argument that curb trading was widespread at the CBOT and was ignored by CBOT officials, finding that CBOT rules specifically prohibited noncompetitive trading and even if curb trading were widespread, that fact did not explain why Vercillo had engaged in noncompetitive trading. From our review of the record, we find ample support for the Commission's findings, and we do not find that it committed any error by rejecting the ALJ's findings on mitigation.

 Vercillo next asserts that the Commission erred in finding that he had not presented enough evidence of rehabilitation to overcome the presumption of non-registrability. First, we note that Vercillo, in his brief, sets forth an incorrect burden or proof. Therein, he states that "[t]here is simply *no* evidence that he is *not* rehabilitated." Appellant's Brief at 23 (emphasis in original). This misstates the burden of proof, since it is up to Vercillo to show that he *is* rehabilitated and not up to the Commission to show that he *is not*. In any event, the record contains substantial evidence to support the CFTC's decision.

First, Vercillo argues that the CFTC abused its discretion by not giving weight to his character witnesses. At the hearing before the ALJ, Vercillo called as character witnesses Scott Early, the general counsel of the CBOT, Mark Gold, a independent trader at the CBOT, and Henry Shatkin, the CEO of a trading company which operates at the CBOT. The Commission stated that it did not accord significant weight to the testimony of any of these witnesses because it does not do so "unless such witness was qualified as an expert." *Vercillo II*, 1997 WL 291441 at *10. None of Vercillo's witnesses had been so qualified. We recently addressed the issue of the Commission's requirement of expert rehabilitation witnesses in *Ryan*, 145 F.3d 910, 921, noting that the Commission has not set forth any criteria for determining when a person is considered an "expert in rehabilitation." This is not the first time we have brought this lack of guidance to the attention of the Commission. *See Cox v. CFTC*, 138 F.3d 268, 275 (7th Cir.1998) (stating that "[f]or the opportunity to present witnesses on the issues of rehabilitation to be meaningful, the Commission must establish some guidelines regarding the kind of testimony it will accept."); *LaCrosse v. CFTC*, 137 F.3d 925, 934 n. 5 (7th Cir.1998) ("the Commission has not provided much guidance on who, other than a probation officer, qualifies as an expert in rehabilitation.").

 Reflecting our increasing frustration with the lack of criteria, we set forth in *Ryan* that "[u]ntil the Commission provides some guidance regarding the kind of testimony it will accept, we will consider it to be an abuse of discretion for the Commission to discount the testimony of character witnesses solely for not being experts." *Ryan*, 145 F.3d 910, 921. We agree that this is the appropriate way to proceed, and we add our voice to the chorus of decisions calling for the Commission to set forth guidelines regarding "experts in rehabilitation." Accordingly, we find that the CFTC's decision to discount the testimony of Vercillo's witnesses simply because they were not "experts in rehabilitation" was an abuse of discretion.

As in *Ryan*, however, we find that notwithstanding the CFTC's abuse of discretion, reversal is not warranted in this case because the Commission offered a valid reason to

accord the testimony of Vercillo's witnesses limited weight. In its decision, the Commission stated that the testimony of Vercillo's witnesses was "not persuasive" because it only showed "at best a perfunctory concern with the customers harmed by Vercillo's wrongdoing," and therefore showed that they had a limited appreciation of the interest of the public. *Vercillo II*, 1997 WL 291441 at *9. This is a legitimate reason for declining to fully credit the testimony of the witnesses, and is amply supported by the record. For example, Henry Shatkin stated that he noticed that Vercillo was a changed person, lacking his old "spunkiness and cockiness." Rec. Doc. 76 at 11. He also stated that Vercillo was an active trader, which was good for the market, and that his formerly "wild" trading style had been subdued. *Id.* at 12–13. Outside of these general observations, however, Shatkin did not provide any detailed explanation as to why he felt that Vercillo would not be a threat to the market if he were allowed to return and resume trading. Mark Gold testified similarly, repeatedly noting that Vercillo was remorseful for his prior conduct and is a "changed individual." *Id.* at 74–75 and 77. While he also opined that Vercillo would not pose a threat to the public or the market, Gold stated that this was because Vercillo's active trading style was beneficial to the market. *Id.* at 75–76. Scott Early testified that he believed that Vercillo would not pose a threat to the market if he returned, but admitted that, at the time Vercillo committed the illegal acts, he only knew Vercillo by reputation. *Id.* at 66. In sum, none of Vercillo's witnesses testified in any detail as to why they believed he would not pose a threat to the public if he were allowed to resume trading, and the Commission was within its discretion in finding that this testimony did not persuasively establish that Vercillo has been rehabilitated.

 Second, Vercillo asserts that his expression of remorse shows that he is rehabilitated. The Commission gave this evidence little weight as well, finding that the wrongful nature of Vercillo's actions was clear at the time he committed his acts. This result is consistent with the CFTC's previous position on statements of contrition. In *In re Horn*, the Commission stated that "[w]hen the wrongful nature of the conduct at issue is clear at the time of the violation, expressions of contrition following detection of the wrongdoing do not necessarily indicate a significant change in character." *In re Horn*, Comm. Fut. L. Rep. para. 24,836 at 36,940. The record supports the inference that Vercillo knew, at the time of his illegal actions, that his conduct was improper. At the time, CBOT rules prohibited noncompetitive trading like that engaged in by Vercillo, and all traders were therefore on notice that they should not participate in such activity. The CFTC did not abuse its discretion.

Finally, Vercillo argues that the fact he has committed no violations of the law since his conviction demonstrates that he is rehabilitated. He also notes that he traded at the CBOT for nine weeks in 1993 without getting into trouble, and that the Commission should have taken this into account. The CFTC acknowledged this evidence, but found that nine weeks of trading was too little to demonstrate that Vercillo had undertaken a changed direction in life. This view was in accord with Commission precedent that while such evidence may be probative of rehabilitation, it is not given substantial weight when the period in question is limited. *In re Bryant*, [1990–92 Transfer Binder] Comm. Fut. L. Rep. (CCH) para. 24,847 at 36,999 (CFTC April 18, 1990) (citations omitted). Additionally, at the time Vercillo was allowed to engage in limited trading, he was the subject of an outstanding administrative complaint. CFTC precedent establishes that the weight to be accorded evidence of absence of wrongdoing is limited when the respondent is subject to an outstanding administrative complaint during the time at issue. *LaCrosse*, 137 F.3d at 932 (citing *In re Silverman*, No. 76–18, 1977 WL 13527 at *2 (CFTC Mar. 14, 1977)). Accordingly, the Commission did not err in not placing great weight on this evidence.

In sum, the record supports the Commission's conclusion that Vercillo did not rebut the presumption that his registration should be denied. Accordingly, we affirm the CFTC's decision to deny Vercillo's registration as a floor broker.

■ Vercillo also challenges the permanent trading ban placed on him by the Commission. At the evidentiary hearing, the Division submitted proof that Vercillo had been convicted of six felonies arising under § 4b of the CEA. Pursuant to § 9(b) of the CEA, 7 U.S.C. § 16(b), such felony convictions give rise to a presumption that Vercillo should be permanently banned from trading on Commission-regulated markets unless he can show by the weight of the evidence that his continued access to such markets will not pose a risk to their integrity. The relevant statute states:

> Any person convicted of a felony under this section shall be ... barred from using, or participating in any manner in, any market regulated by the Commission for five years or such longer period as the Commission shall determine, on such terms and conditions as the Commission may prescribe, unless the Commission determines that the imposition of such ... market bar is not required to protect the public interest.

7 U.S.C. § 13(b).

Vercillo asserts generally that the evidence he presented on rehabilitation was unrebutted, noting that the Division relied solely on the fact that he had been convicted of numerous felonies in support of levying sanctions against him. Our discussion above, finding that the Commission did nor err in finding that Vercillo's evidence did not meet his burden of proof, is equally applicable with regard to the imposition of a trading ban, and we need not repeat ourselves here.

Vercillo also argues that he established that he was not a threat to the marketplace. His sole argument on this point, however, consists of comparing the length of his permanent trading ban with trading bans imposed on others engaged in allegedly comparable conduct. For instance, Vercillo asserts that Nowak received only a six-year trading ban even though his "participation in the same conduct [as Vercillo] makes him equally unfit" to trade. Appellant's Brief at 24.

Part of the reason for Nowak's ban being shorter than Vercillo's, as the brief notes, is the fact that Nowak reached a settlement with the Commission.[5] Vercillo also cites several other cases in which traders were given shorter bans or registration suspensions than he was. This comparison misses the point, however, since, as Vercillo notes in his brief, "sanctions must be fashioned on a case by case basis." Appellant's Brief at 23 (citing *In re Thomas McKinnon Futures, Inc.*, [1986–87 Transfer Binder], Comm. Fut. L. Rep. (CCH) para. 23,753 at 33,970 (CFTC June 25, 1987)). What has happened in other cases, even those which may appear factually similar to Vercillo's circumstances, is irrelevant here. The record substantiates the Commission's finding that Vercillo did not rebut the presumption that he should be permanently banned from trading on CFTC-regulated markets, and we find that there was no abuse of discretion by the Commission.

### III. Permanent Trading Ban and Double Jeopardy Clause

■ Lastly, Vercillo asserts that the permanent trading ban imposed by the CFTC and the revocation of his trading license violate the Double Jeopardy Clause of the Fifth Amendment, because he has already received a prison sentence and been ordered to pay a fine and restitution for the same acts. However, this argument must fail after recent decisions of both the Supreme Court and this court. *See, e.g., Hudson v. United States*, — U.S. —, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (administrative proceedings are civil, not criminal, and do not implicate Double Jeopardy Clause); *Ryan*, 145 F.3d 910, 913–14 (trading ban not "criminal" for Double Jeopardy Clause purposes); *LaCrosse*, 137 F.3d at 932 (permanent trading ban is not "criminal" punishment); *Cox*, 138 F.3d at 274 (revocation of registration pursuant to §§ 8a(D) and (E) of the CEA does not violate Double Jeopardy Clause).

---

**5.** While it is understandable that the CFTC apparently shows some leniency to those with whom it reaches a settlement, it is a bit troubling that Nowak, the apparent mastermind of the illegal conduct engaged in by Vercillo, has received a comparative slap on the wrist for his wrongdoing.

## CONCLUSION

The record demonstrates that the Commission's choice to deny Vercillo's registration and permanently ban him from trading on CFTC-regulated markets is not unwarranted in law or without justification in fact. Accordingly, Vercillo's petition for review is DENIED and the order of the CFTC is ENFORCED.