United States Court of Appeals
Fifth Circuit

**F I L E D**

May 22, 2006

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

———————————————

No. 05-60641

———————————————

R&W TECHNICAL SERVICES, LTD., and GREGORY M. REAGAN,

Petitioners,

versus

COMMODITY FUTURES TRADING COMMISSION,

Respondent.

————————————————————————————

Petition for Review of
the Commodity Future Trading Commission
CFTC Docket No. 96-3

————————————————————————————

Before GARWOOD, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:[*]

Following an earlier remand from this court, the Administrative Law Judge ("ALJ") assessed a decreased penalty against petitioners R&W Technical Services and Gregory Reagan (collectively "R&W"), and the penalty was affirmed by the Commodity Futures Trading Commission ("Commission"). On a second petition for review before this court, R&W challenges the evidentiary rulings of the Commission in connection with the penalty determination and argues that the penalty is excessive. We find no abuse of discretion by the Commission and, accordingly, deny the petition.

———————————

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

In 1992, Reagan formed R&W Technical Services to sell computer software systems that would advise customers about trading commodity futures contracts. The software was designed to make buy and sell recommendations to customers, after customers input real-time financial data. As part of the advertising literature, R&W included claims of profits made while using the software. However, the advertisements did not mention the fact that the realized profits were hypothetical; while R&W did use actual financial data, they had never actually executed the referenced trades in real markets with real money.

In March 1996, the Commission's Enforcement Division filed an administrative complaint against R&W, alleging, *inter alia*, fraudulent solicitation and fraudulent advertising in violation of the Commodity and Exchange Act. In December 1997, the ALJ found R&W liable and imposed a civil penalty of $7.125 million, representing their gross revenues, trebled. In May 1998, R&W moved to reopen the proceedings based on mitigating evidence of customer satisfaction. On appeal to the Commission, in March 1999, the Commission denied R&W's request to reopen the proceedings but lowered the penalty to $2.375 million, representing gross revenues only.[1]

R&W appealed to this court. We affirmed the decision of the Commission on the liability issue but remanded for a reassessment of the penalty. *R&W Technical Servs. Ltd. v. CFTC*, 205 F.3d 165, 178 (5th Cir. 2000). We held that the Commission abused its discretion when it refused to hear testimony of customer satisfaction because evidence of the efficacy of the petitioners' system was relevant in assessing sanctions. *Id*. at 176–77. We also held that the Commission abused its

---

[1]The Commission found that, because there was minimal evidence of customer trading losses, trebling was not warranted.

2

discretion in the amount of sanctions imposed against R&W. *Id*. at 177–78. We determined that the Commission erroneously focused on gross revenues in calculating the penalty because, when a penalty is designed only for deterrence, the proper measure of gain to the defendant is net profits, not gross revenues. *Id.* (citing *CFTC v. AVCO Fin. Corp.*, No. 97 CIV. 3119, 1998 WL 524901, at *1 (S.D.N.Y. Aug. 21, 1998)). We concluded, "Thus, on remand a new assessment of the penalty should begin with the petitioner's net profits, which then should be adjusted lower based upon any mitigating evidence the petitioners present with regard to customer satisfaction." *Id*.

Following remand, the Commission entered two orders, in August 2003 and March 2004, setting guidelines for resolving the penalty issue. In the August 2003 Order, the Commission provided clarification on R&W's ability to present testimony of customer satisfaction.[2] *In re R&W Technical Servs., Ltd.,* [2003–2004 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 29,556, 2003 WL 21805280 at *2 (CFTC Aug. 6, 2003) ("August 2003 Order"). The Commission first addressed the form in which evidence of customer satisfaction would be admissible. The Commission found that, because this court referred to customer "testimony" rather than affidavits, the usual condition imposed by CFTC Rule of Evidence 10.67(f) would still apply. *Id*. This CFTC rule only permits the introduction of affidavits into evidence if "the evidence is otherwise admissible and the parties agree that affidavits may be used." 17 C.F.R. § 10.67(f). As a result, the Commission held that only live testimony of customers would be proper.

Second, the Commission determined that academic studies, of the type offered by experts, did not have a role in R&W's case. August 2003 Order, 2003 WL 21805280 at *3 n.13. The

_____

[2]The Commission also provided guidance on the calculation of net profits; however, the discussion is not recounted because the parties later stipulated to R&W's net profits for the relevant time period.

Commission held that the expert testimony that R&W sought to introduce in their May 1998 motion to reopen did not directly address customer satisfaction and fell outside the scope of this court's prior opinion. In the March 2004 Order, the Commission clarified that "evidence of efficacy should center on proof of actual trading success (or failure) with the system, rather than on theoretical or hypothetical evidence as to whether such systems can work to a customer's advantage." *In re R&W Technical Servs., Ltd.,* [2003–2004 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 29,706, 2004 WL 433573 at *1 (CFTC Mar. 4, 2004) ("March 2004 Order").

In October 2004, an evidentiary hearing was held before the ALJ. R&W offered customer declarations, in the form of boilerplate letters created by R&W and signed by customers, stating customers' general satisfaction with the trading system.[3] The ALJ sustained an objection by the Commission's Enforcement Division to the admission of these customer declarations in accordance with the Commission's August 2003 Order. At the hearing, R&W did not offer either additional customer testimony or documentary evidence showing customers' actual trading results.

In January 2005, the ALJ issued a decision. *See In re R&W Technical Servs. Ltd.*, [Current Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 30,006, 2005 WL 56895 (ALJ Jan. 11, 2005) (ALJ 2005 Decision). The parties stipulated R&W's net profits. As a result, the ALJ only needed to determine if mitigating evidence would reduce the penalty. The ALJ determined that R&W failed to present any new evidence relating to customer satisfaction or actual trading success, and, as a result,

_____

[3]Each declaration began with a letter from Reagan to the customer stating, "The Commodities [sic] Futures Trading Commission claims that R&W trading system is a sham. We want them to know your opinion. We therefore ask, if you agree with the statement below, to please sign and return this letter in the enclosed envelope." Under the statement from Reagan, the letter stated, "I purchased an R&W trading system. I am satisfied with the system. R&W has never participated in my personal account, nor given me personal trading advice. The system performed at least as well as advertised."

R&W was limited to evidence on the record before the remand. *Id*. at *3. The ALJ considered the testimony of Thomas Otten, one of the Division's witnesses, who traded futures contracts for his own account and for his clients. *Id*. Otten had testified at the original liability hearing in August 1997 that, regardless of any R&W misrepresentations, he found the R&W system more consistently profitable than other trading systems. *Id*. The ALJ deduced that Otten was a satisfied customer but that nothing in Otten's testimony permitted the ALJ to infer that R&W's other customers were similarly satisfied. *Id*. at *3–4. The ALJ found that R&W had not submitted other admissible evidence on the issue of customer satisfaction, but, because Otten's testimony was more than de minimis, the ALJ reduced the net-profit baseline by five percent. *Id*. at *4. R&W's penalty was calculated to be $1,156,400, and Reagan's to be $388,200. *Id*.

In June 2005, the Commission summarily affirmed the decision of the ALJ, adopting the findings and conclusions as its own. *In re R&W Technical Servs. Ltd*., CFTC Docket No. 96-3, 2005 WL 1505995 (CFTC June 24, 2005). R&W appeals to this court (1) contesting the evidentiary rulings of the Commission following remand and (2) challenging the penalty imposed as excessive.

## II. DISCUSSION

### A. The Commission's evidentiary rulings

R&W contests two evidentiary rulings: (1) the Commission's exclusion of R&W's customer declarations, and (2) the Commission's exclusion of R&W's experts, Steve Corley and James Thompson. Under the Administrative Procedure Act, this court reviews agency action for abuse of discretion. 5 U.S.C. 706(2)(A). Additionally, because this appeal comes before this court following an earlier remand, we also review the decision of the agency to ensure that it was reached "in due

5

pursuance of our previous opinion and mandate." *Burroughs v. FFP Operating Partners*, 70 F.3d 31, 33 (5th Cir. 1995).

**(1) The Commission's exclusion of R&W's customer declarations**

R&W claims that the Commission erred by preventing them from introducing evidence of customer satisfaction in the form of declarations from 177 satisfied customers. It argues that this court's opinion explicitly stated that the Commission should have heard testimony demonstrating customer satisfaction. However, the Commission did not disregard the mandate of this court. In our earlier opinion, we were concerned that R&W was unable to present testimony of customer satisfaction, but we did not address the form in which such evidence would be deemed admissible. *See R&W Technical Svcs.*, 205 F.3d at 177 (stating only that the Commission "abused its discretion in refusing to reopen the record to hear [the] evidence.").

In the August 2003 Order, the Commission clarified the form in which the evidence of customer satisfaction would be admissible, invoking CFTC Rule of Evidence 10.67(f). *See* 17 C.F.R. 10.67(f) ("Affidavits may be admitted by the Administrative Law Judge only if the evidence is otherwise admissible and the parties agree that affidavits may be used."). R&W presents no argument why the Commission should not invoke this rule, except to claim that it was contrary to this court's holding. However, nothing in our earlier opinion suggested that it intended to abrogate the Commission's rules. In reviewing agency action, we routinely grant deference to an agency's interpretation of its own rules and regulations, and similarly here, we afford the Commission deference in its decision to invoke its own rule. *See, e.g., Barnhart v. Walton*, 535 U.S. 212, 217 (2002) ("Courts grant an agency's interpretation of its own regulations considerable leeway.") (citation omitted); *Wang v. Ashcroft*, 260 F.3d 448, 451 (5th Cir. 2001) (citing *Wright v. United*

*States,* 164 F.3d 267, 269 (5th Cir. 1999)).

**(2) The Commission's exclusion of R&W's experts**

R&W also argues that the Commission erred in excluding the testimony of their expert witnesses, Steve Corley, a technical developer at R&W, and James Thompson, a professor of statistics. R&W states that the mandate of this court was to consider evidence of the efficacy of the system and customer satisfaction and that their expert witnesses would address both of these points because "scientific evidence that the R&W system was very profitable would clearly establish that customers were likely to be satisfied." R&W further argues that the fact that their expert testimony is based on hypothetical results should not prevent the testimony from being admitted. It claims that, while hypothetical results cannot be represented as actual results in advertising, they can be used as the basis for expert testimony.

In our prior opinion, our ruling that efficacy was relevant in assessing sanctions was in response to the Commission's exclusion of R&W's proffered evidence of customer satisfaction on the ground that efficacy of the system was irrelevant. *R&W Technical Servs.*, 205 F.3d at 176–77. We rejected this ground of exclusion, since customer satisfaction, to the extent it showed that customers made and did not lose money, is relevant to a penalty determination. In so finding, we turned to a Commission decision, *In re Grossfeld*, for the proposition that financial loss suffered by customers is one of the factors in determining a civil monetary penalty. *Id.* at 177 (citing *In re Grossfeld*, [1996–1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,931, at 44,468 & n.30, 1996 WL 709219, at *12 (CFTC Dec. 10, 1996)). In other words, in our prior opinion, we were concerned that the Commission did not consider evidence of actual customer success or loss.

The focus of the inquiry in assessing sanctions is on the customers. When the Commission

assesses a penalty against a party who commits fraud against his customers in violation of the CEA, the Commission looks at the effect of a party's illegal behavior on his customers. *See In re Roger Wright*, Comm. Fut. L. Rep. (CCH) ¶ 29,412, 2003 WL 548760, at *51 (CFTC Feb. 25, 2003) (stating that, in assessing a penalty, the Commission gives "primacy to harm" and that, ordinarily, "the consequences flowing from retail-level wrongdoing include financial injury to the respondent's customers and financial benefit to the respondent."). The hypothetical results of the type proffered by R&W's experts are, therefore, not part of the inquiry. Because the Commission's ruling was in accordance with the mandate of our prior opinion and consistent with the Commission's methodology in assessing a penalty, we find that the Commission did not abuse its discretion in excluding R&W's expert testimony.

## B. Excessiveness of penalty

R&W disputes the excessiveness of the penalty imposed and primarily raise two points of error in the ALJ's determination of the penalty:[4] (1) that the ALJ gave insufficient weight to the testimony of Enforcement Division's expert witness Thomas Otten, and (2) that this court's prior opinion suggested the penalty should be capped at $100,000. Sanctions are reviewed for abuse of discretion. *R&W Technical Servs.*, 205 F.3d at 177 (citing *Ryan v. CFTC*, 145 F.3d 910, 916 (7th Cir. 1998)). *See also Wilson v. CFTC*, 322 F.3d 555, 560 (8th Cir. 2003) (citing *Reddy v. CFTC*,

---

[4]R&W also argues (1) that the Commission conceded that R&W's system was theoretically successful, basing this claim on a statement in the Commission's August 2003 Order and (2) that, because the sale of their product did not constitute a social harmful activity, the high penalty was unwarranted. Both of these arguments are unavailing. First, the Commission's August 2003 Order stated in its introductory section that R&W's system was theoretically successful, summarizing the procedural history of the case. The Commission's statement was a description, not a concession about the merits of R&W's product. Second, whether the sale of R&W's product is socially harmful is irrelevant because that determination only becomes a factor in the so-called social-cost method of calculating penalties. Here, the penalty determination began with a calculation of net profits.

191 F.3d 109, 123 (2d Cir. 1999); *Vercillo v. CTFC*, 147 F.3d 548, 552–53 (7th Cir. 1998); *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1564–65 (11th Cir. 1995)).

**(1) Testimony of Thomas Otten**

As stated, Thomas Otten testified at the 1997 hearing for the Enforcement Division; he was a registered commodities trading advisor who traded for himself and for clients. For his testimony that he found the R&W trading system more consistently profitable than others, the ALJ reduced the penalty by five percent. R&W argues that the ALJ should have given substantial weight to Otten's testimony since he was a professional who had tried several systems and used the R&W system for his customers.

The ALJ discussed his reasons for not imputing Otten's success with the system to other R&W customers at some length. ALJ 2005 Decision, 2005 WL 56895 at *3. First, the ALJ stated that he had no evidence that other customers shared Otten's view. Second, the ALJ noted that Otten did not quantify how many of his customers benefitted from the R&W system nor how much was earned. Third, the ALJ observed that, because the software was written to accommodate more than twenty different commodity futures contracts, and because users could change a number of variables on their own, it would be very difficult to impute the results of one satisfied customer to another.

This court does not reweigh the evidence or substitute its judgment for the administrative fact finder. *New Thoughts Finishing Co. v. Chilton*, 118 F.3d 1028, 1030–31 (5th Cir. 1997); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). *See also Guttman v. CFTC*, 197 F.3d 33, 39 (2d Cir. 1999). As mandated by this court, the ALJ reduced R&W's penalty for the mitigating effect of Otten's testimony. Based on various considerations, the ALJ determined that a five percent reduction was warranted. R&W asks us to reweigh the evidence of Otten's testimony as it relates to the ALJ's

9

determination that only a five percent reduction was warranted, but the weight afforded particular evidence is within the province of the ALJ, not this court.

**(2) Alleged $100,000 penalty cap**

In our prior opinion, we stated, "At oral argument, counsel for the Commission was unable to say that there had ever been a fine greater than $100,000 in a case in which there had been no demonstration of harm to others." *R&W Technical Servs.*, 205 F.3d at 178. R&W argues that this statement signifies that this court suggested a maximum penalty of $100,000 for their case. However, our statement was an observation that counsel had been unable to cite such a case; there is no language in the opinion which indicates we intended the explicit suggestion urged by R&W. Further, R&W's claim is inconsistent with our prior opinion's remand instructions to the Commission. We directed the Commission to begin its recalculation of the penalty with net profits, which far exceeded $100,000. Additionally, in the ALJ's 2005 Decision, the ALJ cited three cases where a fine greater than $100,000 was imposed despite a lack of harm to others. *See* ALJ 2005 Decision, 2005 WL 56895 at *4 n.24 (citing *In re First Commercial Fin. Group, Inc.*, [1998–1999 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 27,648 at 48, 090 (CFTC May 20, 1999); *In re New York Currency Research*, [1996–1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶27,311 at 46, 397 (CFTC Mar. 31, 1998); *In re Glass*, [1996–1998 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶27, 337 at 46,561–9 (CFTC Apr. 27, 1998)). Because the statement was an observation, not a suggestion, the ALJ did not abuse his discretion by not considering the statement in the manner urged by R&W.

### IV. CONCLUSION

The petition for review is DENIED.

10