**Dirk L. WITTER, Petitioner,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Respondent.**

No. 15-3535

United States Court of Appeals, Seventh Circuit.

Submitted July 22, 2016 *

Decided August 10, 2016

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. The petition for review is thus submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

Dirk L. Witter, Mesa, AZ, Pro Se.

Robert A. Schwartz, Martin B. White, Attorneys, Commodity Futures Trading Commission, Office of the General Counsel, Washington, DC, for Respondent.

Before WOOD, Chief Judge, and ROVNER and HAMILTON, Circuit Judges.

WOOD, Chief Judge.

This is a tale of miscommunication. Our task is to decide where the resulting loss must fall. It involves some futures transac-

tions that Dirk Witter, whose broker was TransAct Futures, was trying to stop. Witter contends that he telephoned Robert Skelton, an employee of TransAct, with instructions to cancel several standing orders. What is clear is that Skelton did not do so, and Witter lost $23,000 on the resulting market position. What is unclear is why Skelton did not act: Witter says that Skelton disregarded his instructions, but Skelton says that Witter never told him to cancel all seven of the working orders at issue. Witter filed a complaint against TransAct and Skelton with the Commodity Futures Trading Commission, see 7 U.S.C. § 18(a), but it found that neither one had violated the Commodity Exchange Act. See *id.* § 6(b). Witter has filed a petition for review from that decision, but we conclude that the Commission's decision was supported by the evidence, and thus we deny the petition.

The events that preceded the disputed phone call began in the summer of 2007. Witter started using TransAct that summer to broker trades in the commodity-futures market. He usually placed his trades online, but he often had problems with his trading software, requiring him to call TransAct for help. On the night of August 16, 2007, his trading software stopped working. At the time, Witter had one open position (meaning that he was obligated to comply with the terms of a contract) in E-Mini S & P futures contracts. He also had seven working orders (standing instructions to enter into a contract if the market price reached a specified value), which he previously had set up using the trading software, for additional positions. After calls to the software company went unanswered, he phoned TransAct and spoke with Skelton, a customer support representative.

The parties recall this conversation differently. According to Witter, he gave Skelton two instructions: (1) place a stop-loss order (an instruction to limit his loss) on the open position in the E-Mini S & P, and (2) cancel all seven working orders. Skelton disputes the second instruction. According to Skelton, Witter told him to cancel only three of his seven working orders—those for Treasury and Dow Index futures contracts. Witter, he recalls, told him *not* to cancel the four working orders for E-Mini S&P contracts. TransAct says that it did not record this call.

A problem came to light the following morning. Witter was still unable to log into his trading software, and so he called TransAct to check on the status of his last trade. He spoke with another customer service representative, Tom Surico. When he asked Surico to "tell me what my current position is in the mini S & P's," Surico responded that he was "flat" and that he did not see a position. TransAct recorded this call. When Witter logged into his online account later that day, he noticed that its overall value had decreased by over $23,000. Believing this was an error, Witter called TransAct. An agent told him that the values were correct because he had lost money on a new trade that morning. Witter responded that he had not made any trades that morning and wondered if TransAct had failed to cancel all of his working orders. The agent replied that TransAct had not received instructions to that effect. Witter ordered TransAct to "check the tapes!" of his phone call, which, he said, would prove that he had asked TransAct to cancel the seven working orders. Witter later learned that TransAct had not recorded the critical call.

In his complaint to the Commission, Witter claimed that TransAct and Skelton violated the Commodity Exchange Act. See 7 U.S.C. § 6b(a). He focused on their alleged failure to follow his instructions to cancel all working orders. As he put it, "I believe TransAct is lying. I believe that

Rob [Skelton] made a mistake and cancelled 3 orders but failed to cancel the other 4." He continued, "I believe that TransAct is lying [about not recording his phone call to Skelton]. They have the recording of that conversation. The problem is that it verifies my story and proves them wrong."

The case proceeded in stages. First, Witter invoked the Commission's summary procedure, see 17 C.F.R. §§ 12.200–12.210, under which a judgment officer decides the case based on the parties' verified written submissions, *id.* § 12.208, and, if necessary, a hearing, *id.* § 12.208–09. The judgment officer conducted a telephone hearing, at which both Witter and Skelton testified. After considering the evidence, the judgment officer dismissed the complaint, finding that Witter had failed to prove his allegations by a preponderance of that evidence. Both Witter and Skelton, he explained, testified sincerely—if "leavened with a bit of self-interest"—but overall he found that Skelton's version was more plausible and Witter had a "propensity to confuse trading terms" like "position" and "order." The judgment officer refused to draw an adverse inference based on TransAct's failure to produce a recording of the "one crucial conversation" because TransAct was not required to record the call. Finally, he added, even if Surico had not reminded Witter about his working orders, Surico did not violate the Commodity Exchange Act; the phone recording reflected that Witter had asked Surico to focus only on the position that TransAct had closed the night before.

Witter appealed that adverse judgment to the Commission, see 17 C.F.R. § 12.210(e), which remanded the case for further discovery on whether TransAct had recorded the call between Witter and Skelton. A recording of that call, the Commission thought, would be the best evidence of whether Witter had instructed Skelton to cancel all his working orders. It noted, however, that if discovery about the recording proved fruitless, the Commission would find no clear error on the current record and defer to the judgment officer's credibility analysis.

On remand, Witter submitted evidence that TransAct's phones were capable of recording multiple calls simultaneously on a single handset. TransAct conceded that its phones had this capability and that it often records calls for training purposes. But, it explained, its system was configured to redirect some of its incoming calls from a handset already in use to a handset not in use, and redirected calls did not get recorded. When Witter called, Skelton "was currently on another line helping another account holder," and the phone system redirected Witter's call to a nonrecording line. Considering the new evidence, the judgment officer concluded that Witter had not shown by a preponderance of evidence that TransAct recorded the call. Skelton, the judgment officer found, was on his recorded line with another customer when Witter's call came in, and Witter's call was redirected to another handset that did not record the call. The judgment officer therefore declined to draw an adverse inference from TransAct's inability to produce a recording of the call. Relying on his original credibility assessment, he dismissed the complaint. The Commission, seeing no error in the judgment officer's findings, affirmed.

In considering Witter's petition for review, see 7 U.S.C. § 18(e), we begin with a comment on the standard for reviewing the factual findings. The Commodity Exchange Act once required the courts of appeals to treat the Commission's findings as conclusive if supported by the "weight of [the] evidence." 7 U.S.C. § 9 (2009); see *id.* § 18(e) (referring to § 9 to determine procedure for judicial review); *Hlavinka v.*

*Commodity Futures Trading Comm'n*, 867 F.2d 1029, 1032–33 (7th Cir. 1989). But when Congress amended the Act in 2010 it removed that language. See 7 U.S.C. § 9 (2016); *Chu v. Commodity Futures Trading Comm'n*, 823 F.3d 1245, 1248–50 (9th Cir. 2016). In *Chu*, the Ninth Circuit concluded that the removal of the standard was "purposeful, not accidental." 823 F.3d at 1250. That court thus turned to the Administrative Procedure Act, 5 U.S.C. § 706, for the new standard and applied the "substantial evidence" standard from § 706(2)(E). *Id.* at 1250. The Commission concedes that the APA now governs the standard of review, but it argues that in this case "arbitrary [and] capricious" is the standard, 5 U.S.C. § 706(2)(A), not "substantial evidence." We agree with the Ninth Circuit that it is proper to turn to the APA for the standard. As for which standard to use, putting to one side the fact that the difference between "substantial evidence" and "arbitrary and capricious" brings to mind angels dancing on the head of a pin, see, *e.g.*, *Aman v. F.A.A.*, 856 F.2d 946, 950 n.3 (7th Cir. 1988), we do not need to take a position in this case. The Commission's findings are supportable either way.

■ Witter's first argument has both legal and factual aspects. He contends that the judgment officer should have drawn an adverse inference from TransAct's inability to produce a recording of the call between him and Skelton. TransAct, he says, had a duty under both federal regulation, see 17 C.F.R. § 166.2, and its customer agreement to record the call. And, he continues, the evidence about TransAct's phone system required a finding that, because Skelton's telephone was capable of recording multiple calls on a single handset, Witter's call to Skelton must have been recorded. Witter adds that if (or to the extent that) TransAct configured its phones to redirect some incoming calls to unrecorded lines, that action was a reck-

less violation of federal regulation and the customer agreement.

Witter's legal and factual contentions are both wrong. TransAct had no duty to record the call between Witter and Skelton. Federal regulations require that, before buying or selling a commodity, a merchant such as TransAct must receive either "specific authorization" (the "precise commodity interest to be purchased or sold" and the "exact amount" of that interest) or "authorization in writing." 17 C.F.R. § 166.2. No regulation requires the merchant to record phone calls to *cancel* previously authorized orders to buy or sell. Nor did TransAct's customer agreement include any such requirement. The agreement says only that the customer gives TransAct permission to record calls, not that the company must do so. Moreover, although evidence showed that TransAct was capable of recording—and sometimes did record—multiple calls directed to a single handset, that evidence did not require a finding that Witter's call to Skelton was recorded. The judgment officer could reasonably rely on the evidence that TransAct redirected some calls from one handset to another, non-recording line, to conclude that Witter's was one of those calls. The judgment officer thus did not err in declining to draw an adverse inference from the missing recording.

■ Witter next challenges the judgment officer's credibility assessment, accepting Skelton's recollection of the circumstances and content of the phone call over Witter's. In crediting Skelton's version, the judgment officer explained that Witter tended to confuse trading terms. Witter responds that his familiarity with trading vocabulary is irrelevant to his sincerity. He adds that the officer ignored inconsistencies between Skelton's oral testimony and his affidavit, and between Skel-

**750**

ton's and Witter's accounts of how the phones were configured.

■ We give great deference to an agency's credibility determination, overturning it only in extraordinary circumstances. See *Staffing Network Holdings, LLC v. N.L.R.B.*, 815 F.3d 296, 304 (7th Cir. 2016); *Vercillo v. Commodity Futures Trading Comm'n*, 147 F.3d 548, 555 (7th Cir. 1998). The record amply supports the credibility ruling. Mixing up terms may not make Witter insincere, but it does bear on what Skelton understood Witter to be asking of him. The terms that Witter repeatedly conflated at the hearing—terms like "order" and "trade"—were directly related to the disputed call. Moreover, the judgment officer knew that Skelton's affidavit and his oral testimony revealed minor inconsistencies. The officer reasonably gave more weight to Skelton's affidavit because Skelton wrote it shortly after the disputed call. Lastly, in accepting Skelton's testimony over Witter's about the configuration of TransAct's telephones, the judgment officer reasonably took into account Skelton's greater familiarity with the system.

■ Witter's last argument is about Surico. He contends that when he spoke to Surico the morning after Witter and Skelton had talked, Surico wrongfully misled him about the status of his working orders. But the judgment officer reasonably concluded from the phone recording that Surico understood Witter to be asking only about the position that closed the previous night, and not about his other working orders. Witter replies that TransAct tampered with the recording. But he never raised this contention to the Commission, and he did not prove tampering. Thus the record does not require holding TransAct

liable for Surico's statements. See 7 U.S.C. § 6b(a).

We Deny the petition for review.